TRIMBLE, PLAINTIFF IN ERROR, v. THE PEOPLE, EX REL. PHELPS, DEFENDANT IN ERROR.

1. JURISDICTION OF THE SUPREME COURT.

Whenever a constitutional question is necessarily to be determined in the adjudication of a case, this court has jurisdiction to review the proceeding upon appeal or writ of error.

2. SAME.

It matters but little how a constitutional question is raised in order to give the court jurisdiction, whether by the pleadings, objections to evidence or by the argument of counsel, provided it fairly appears from the record that the decision of such question is necessary, and also that the question raised is fairly debatable. Mere assertion that such a question is involved is insufficient.

3. SAME.

Whenever the construction of a constitutional provision, state or national, is necessary to a determination of a case, this court has jurisdiction not only of the constitutional question, but of all other matters necessary to a complete determination of the controversy.

4. PUBLIC OFFICERS—AMOTION.

The governor has power to remove a member of the fire and police board of the city of Denver from his office, for cause, of the sufficiency of which cause the judgment of the executive is conclusive, provided it be stated in writing and be other than political.

5. LEGISLATIVE POWER.

The legislature, having power to create an office, has power to provide the manner in which it shall be filled, and like power to provide for removals.

6. EXECUTIVE POWER—REMOVAL OF OFFICERS.

The existence of the cause for which the governor may remove a fire and police commissioner may be ascertained in any manner satisfactory to himself. The institution of an investigation in the nature of a judicial or *quasi*-judicial proceeding is not required by the statute relating to that office.

*Error to the District Court of Arapahoe County.*

ACTION under the code for the usurpation of the office of police commissioner of the city of Denver. Judgment for relator Phelps. Trimble brings the case to this court upon writ of error.

On the 4th day of April, 1893, George H. Phelps was nominated, and by and with the advice and consent of the senate, appointed by the governor to the office of police commissioner of the city of Denver. He having duly qualified entered upon the discharge of the duties of his office, and continued in the discharge of the same until the 27th day of June, 1893, when the governor removed him.

The proceedings with reference to this removal so far as the governor is concerned were inaugurated on the 11th day of June, 1893, by the following letter:

"State of Colorado—Executive Chamber.
"Denver, June 11, 1893.

"Mr. Phelps, F. & P. B'd.  Denver, Colorado.

"*My Dear Sir:* After much reflection I have concluded that your conduct upon the F. & P. Board has been such that it has lost you the confidence of a majority of the citizens of Denver and that you will be unable to benefit the city by a longer continuance in office. Believing that the good of the Populist party in Colorado and of the state administration require it, I respectfully ask that you send in your resignation as a member of the F. & P. Board, as early as Tuesday evening of this week.

"Very truly yours,

"DAVIS H. WAITE, Gov. of Colo."

Mr. Phelps having in the meantime declined to resign, upon the 15th day of June the governor caused to be served upon him the following:

"State of Colorado—Executive Office.
"Denver, June 15, 1893.

"George H. Phelps, Esq., Police Commissioner, City of Denver, Colo.

"*Sir:* You are hereby notified and summoned to be and appear before me, at my office (Executive Chambers) in Denver on Friday, June 16th at 10 A. M., to show cause, if any you have, why you should not be removed as police commissioner

of the city of Denver for neglect of duty, or malfeasance in office, in the failure to arrest or prosecute one, Coryell, indicted May last for crime involving the reputation and integrity of yourself as a member of the Fire and Police Board, and also for such incompetency in your administration of criminal affairs in said city of Denver, as to lose you the confidence of the people of the said city.

"DAVIS H. WAITE, Gov. of Colo."

The next day a hearing was had before the governor, although no specific charges were filed.   The relator was denied the right of appearing by counsel, and his application for a short continuance to prepare for trial was overruled.   As the result of the investigation and on the following day the governor issued an order in writing, which after certain recitals concludes as follows:

"It is not necessary to find, nor do I find that Messrs. Stone and Phelps were corruptly interested in the offense of Coryell, but I do find on the part of Messrs. Stone and Phelps, and each of them, such failure to recognize the gravity of the situation, the necessity of some prompt and effective action to exonerate the police authorities of the city from any connection, real or apparent, with the Coryell matter, and such incompetency in allowing the said Coryell the freedom of the police office for consultation and under circumstances which might plausibly be considered confidential, that such conduct amounts to neglect of duty and merits, therefore, the removal from office.

"It is therefore ordered that C. B. Stone be and he is hereby removed from the office of fire commissioner of the city of Denver, and that George H. Phelps be and he is hereby removed from the office of police commissioner of the city of Denver.

"DAVIS H. WAITE,
"Governor of Colorado."

Thereafter such further proceedings were had as resulted in the appointment of plaintiff in error Trimble to the office of police commissioner in place of relator.

The following provisions of the statute and of the state constitution are referred to in the opinion:—

### COURT OF APPEALS.

" No writ of error from, or appeal to, the supreme court shall lie to review the final judgment of any inferior court, unless the judgment, or, in replevin, the value found exceeds two thousand five hundred dollars, exclusive of costs. *Provided*, This limitation shall not apply where the matter in controversy relates to a franchise or freehold, nor where the construction of a provision of the constitution of the State or of the United States is necessary to the determination of a case. *Provided, further*, That the foregoing limitation shall not apply to writs of error to county courts." Session Laws of 1891, p. 118.

### CHARTER OF THE CITY OF DENVER.

" Sec. 45. Immediately upon the passage of this act, and biennially thereafter, the governor of the state of Colorado shall, by and with the advice and consent of the senate appoint the fire commissioner, the police commissioner, and the excise commissioner for the term of two years, who shall in 1893 take the places, and shall exercise the powers and perform the duties of the fire and police board of the city of Denver. The governor may in vacation of the senate, fill vacancies by appointments in writing filed with the secretary of state ; and all appointments by the governor shall be made with power of suspension or removal at any time for cause, to be stated in writing, but not for political reasons. * * * All appointments made by the mayor shall be in writing, filed with the city clerk, with power of suspension or removal at any time for cause stated in writing filed with the same officer, but not for political reasons, and with power to fill vacancies in the same manner." Session Laws of 1893, p. 172.

" Every person holding any civil office under the state, or any municipality therein, shall, unless removed according to

law, exercise the duties of such office until his successor is duly qualified; * * * " Constitution, article XII, sec. 1.

" All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law." Constitution, article XIII, sec. 3.

" The governor shall nominate, and by and with the consent of the senate appoint all officers whose offices are established by this constitution or which may be created by law, and whose appointment or election is not otherwise provided for, and may remove any such officer for incompetency, neglect of duty or malfeasance in office. * * * " Constitution, article IV, sec. 6.

Messrs. O'NEILL & PARK and Mr. PLATT ROGERS, for plaintiff in error.

Mr. W. F. ROGERS, Mr. I. G. BARLOW and Messrs. ROGERS & STAIR, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

It is suggested by counsel that this court is without authority to review the judgment of the district court in this proceeding. It is conceded that if this court has jurisdiction since the enactment of the statute creating the court of appeals, it is by virtue of the proviso in the first section of the act creating that court, by which the jurisdiction of this court is retained where the construction of a provision of the consitution of the State or of the United States is necessary to the determination of a case.

The object of providing for the jurisdiction of this court in all cases where constitutional questions are involved is that questions of such grave importance, affecting the organic law of the state, and the power of the legislative, executive and judicial departments should be determined by the highest court in the state. In several states intermediate courts of

review have been created, but the provisions fixing the jurisdiction of such courts are far from uniform. The section in force in this state does not appear to have been copied, even in substance, from the laws of any other state. It has the merit of being couched in as direct and positive language as could well have been employed.

Under the proviso, whenever a constitutional question is necessarily to be determined in the adjudication of a case, an appeal or writ of error will lie from the final judgment to this court. It matters but little how such question is raised, whether by the pleadings, by objections to evidence, or by argument of counsel, provided the question is by some means fairly brought into the record by a party entitled to raise it. It is obvious, however, that some limitation must be placed upon the foregoing proviso, otherwise, every case might be brought into this court and thereby the power and usefulness of the court of appeals destroyed. It is clear that mere assertion that a constitutional question is involved will not be sufficient to give jurisdiction. It must fairly appear from an examination of the record that the decision of such question is *necessary*, and also that the question raised is fairly debatable. Our attention has been called to a number of cases in which this question has been raised under statutes, which although dissimilar from the one in force in this state, the decisions are valuable as authorities in support of the conclusion that the constitutional question invoked to give the court jurisdiction must be fairly debatable, and not based on mere assertion. To this extent, at least, the authorities are uniform. See Elliott's Appellate Procedure, sec. 33 ; *The City of Cairo v. Bross*, 99 Ills. 521 ; *Chaplin v. Commissioners of Highways*, 126 Ills. 264; *Benson, Administrator, v. Christian*, 129 Ind. 535 ; *Williams v. Louisiana*, 103 U. S. 637.

The statute creating the court of appeals has been in force in this state but a short time, and it is obvious that the practice under it can only be developed and become settled as the result of experience and judicial decision from time to time as questions shall be presented. We shall not undertake to de-

termine in this case, nor is it necessary to determine, whether or not constitutional questions which have once been determined by this court can thereafter be considered open to controversy, to the extent of furnishing ground for jurisdiction in subsequent cases in this court.

Under the foregoing provision, whenever the construction of a constitutional provision, state or national, is *necessary* to a determination of a case, the court has entire jurisdiction of the case, not only of the constitutional question, but of all other matters necessary to a complete determination of the controversy. The same result would necessarily follow from the well established rule that the incidents of a class of cases follow the class. This rule is now universally recognized. Any other would distribute the cases by piecemeal between the two courts of review, involving our litigation in hopeless and inextricable confusion. Elliott's Appellate Procedure, sec. 36 ; *Smith v. Newberne*, 70 N. C. 14 ; *Cook County v. Mc-Crea*, 93 Ills. 236.

In this case a constitutional question was raised in the court below by defendant in error, and as we shall presently show, such question was erroneously determined in his favor. Still other constitutional questions were raised in that court. The determination of these questions was found necessary by the district court in deciding the case. They have been fully argued in this court, and must *necessarily* be construed upon this review. The jurisdiction of this court must, therefore, be taken as established.

The underlying error that entered into the decision of the district court is upon the construction of section 6 of article IV of the Constitution. This provides that the governor " may remove any such officer for incompetency, neglect of duty or malfeasance in office." The court assumed that the authority for the removal of relator rested upon this constitutional provision. It was construed as a limitation upon the exercise of the power of removal from office, and to deprive the governor of the right of removal unless there existed one of the three specified reasons mentioned therein. The

court further held that whether such reason existed in a particular case must be determined upon an investigation, in its character judicial, before the governor was authorized to act.

An analysis of the constitutional provision, however, shows that the officers therein referred to are, *first*, those whose offices are established by the constitution ; *second*, those whose offices are created by law, the appointment or election to which is not otherwise provided for.   The relator's office does not fall under either class mentioned, for while it is true that his office was created by law, his appointment is also provided for by statute, and the same statute provides that such appointment shall be made with power of suspension or removal by the governor at any time, for cause to be stated in writing, but not for political reasons.   The office being one of statutory creation, the manner of filling it, and the mode of removal and filling of vacancies being also provided by statute, the case falls clearly outside of those offices to which the constitutional provision relates.   *The People ex rel. v. Osborne*, 7 Colo. 605 ; *Brown v. The People*, 11 Colo. 109.

In this connection we may consider section 1 of article XII, and section 3 of article XIII of the Constitution.   The argument based upon these provisions is to the effect that before an officer not liable to impeachment can be removed the procedure leading up to a judgment or removal must be prescribed by an act of the legislature.   These two provisions, singly or together, do not warrant this deduction.   The first in the order in which they appear in the constitution provides only that, " Every person holding any civil office under the state, or any municipality therein, shall, unless removed according to law, exercise the duties of such office."   The words " according to law " in this section can have no other construction than that such officers shall be removed as provided by the constitution, or statute law.   And the same is equally true of section 3 of article XIII, providing that certain officers shall be liable to removal for misconduct or malfeasance in office in such manner as may be provided by law. There is certainly nothing in these provisions prohibiting the

legislature from authorizing the summary removal of the relator in this case, and if removed in accordance with a constitutional statute he was removed " according to law."

It is claimed that the provision in reference to removals by the governor applies only to appointees made by that officer to fill vacancies caused by resignation, death or otherwise of the appointees confirmed by the senate, and that as to those appointments made by the governor and confirmed by the senate, the governor alone has no power of removal. In support of this claim the following cases are cited: *The People v. Cazneau*, 20 Cal. 504; *The People v. Freese*, 76 Cal. 633; *The People v. Freese*, 83 Cal. 453. These decisions were based upon the statutes of California, providing that certain officers appointed by the governor, with the advice and consent of the senate, could only be removed by the governor with the concurrence of the senate. The power of the legislature to invest the governor alone with authority to remove being expressly recognized, as appears from the following extract from the opinion written by Chief Justice Field in *People v. Cazneau, supra*. " The office was created by law and the mode in which the office and vacancies therein should be filled was matter purely of legislative discretion."

Our statute furnishes a conclusive answer to this argument of counsel. Section 45 of the charter, after providing for the appointment of the fire, police and excise commissioners by the governor by and with the advice and consent of the senate, further provides that the governor may in vacation of the senate fill vacancies by appointment in writing filed with the secretary of state, and all appointments by the governor shall be made with power of suspension or removal at any time for cause, etc. Such broad and sweeping language as this is certainly sufficient to include all the appointments provided for in said section, whether made with the advice and consent of the senate, or to fill vacancies during vacation of the senate ; and to undertake to restrict the power of the governor, as urged by counsel, would be a perversion of the letter and spirit of the act.

Authorities are cited, although not seriously relied upon, to show that an office is property and that the possessor has a vested right therein. This, however, grows out of the common law rule regarding an office as a hereditament. It can have no foundation in a republic like ours. "Public offices," says Ruggles, C. J., in *Connor v. New York*, 5 N. Y. 285, "are not incorporeal hereditaments, nor have they the character or qualities of grants. They are agencies. With few exceptions, they are voluntarily taken, and may, at any time, be resigned. They are created for the benefit of the public, and are not granted for the incumbent. Their terms are fixed with a view to public utility and convenience, and not for the purpose of granting the emoluments during that period to the office holder." See also, Mechem on Public Officers, secs. 464, 465.

The statute only requires that the reason for removal shall be other than political and that it shall be stated in writing. The words "but not for political reasons" are words of limitation, and could have been deemed necessary by the legislature for but one reason, to wit : that otherwise, the governor might remove for political purposes. The intent on the part of the legislature to confer the power of removal for any other cause satisfactory to the governor, is made plain by the words of limitation. Was the action taken by the governor authorized by the statute? By it the governor is given full power over the removal of the officers named, subject to the specified restrictions. It is a familiar principle, subject to general application, except as otherwise limited by the constitution, that municipal corporations are creatures of the statute, and that the legislative power over the same is plenary. The legislature had the power to provide for the creation of a police commissioner for the city of Denver; it had the power to provide the manner in which such office should be filled, and there can be no doubt that it had like power to provide for removals.

In the same section in which the authority is conferred upon the governor to remove certain officers for cause, like

authority is conferred upon the mayor to remove officers appointed by him. It is to be observed that the language of the statute is substantially the same in both instances. The legislature, in dealing with these officers, was dealing with the chief executive officer of the state and with the chief executive officer of the city of Denver. It certainly understood that in administering the affairs of the state in the one instance, and the affairs of the city of Denver in the other, these administrative officers would be likely to be called upon to act in a summary manner with their subordinates in certain contingencies, and the fact, if it be a fact, that the governor acted in this case without sufficient reflection, is a weak argument against the investiture of the power of removal in the executive of officers appointed by him. Experience has demonstrated that the power of removal must be lodged somewhere ; and the fact that the power exists and may be exercised as occasion requires carries with it the possibility that the power may not always be wisely used. But if this is to be taken as a conclusive argument against the power, it applies as well to all investiture of authority, and would overthrow government itself.

Whatever may be the rule as to those officers, the removal of whom for certain specified causes is provided by other statutes or by the constitution, the governor, under the statute before us, is not required, as a prerequisite to removal, to institute an investigation in the nature of a judicial or *quasi*-judicial inquiry. The investiture of the power of removal here given is restricted in but two particulars; it must not be exercised for political reasons, and the cause of removal must be stated in writing. In considering removals under this act we must assume that the law-making body was of the opinion that the requirement that the cause of removal should be stated in writing was the only check necessary to prevent an arbitrary and oppressive abuse of the power.

If removals were only authorized for certain specified reasons a question of procedure might have been presented more difficult of solution. In this instance the cause stated does

not import any wrong doing to the officer, and while it may not be such as would have had weight with a court, it was deemed sufficient by the governor, and his judgment is final and decisive. The office of police commissioner is created by the statute; it was accepted by the relator under the conditions imposed by the act, among which was that the incumbent should hold it subject to removal by the governor for cause.

Under the statute the cause that may be sufficient to warrant removal is to be determined by the governor, and no mode of inquiry being prescribed he is at liberty to adopt such mode as to him shall seem proper, without interference on the part of the courts. The governor was not bound to examine witnesses under oath, or otherwise, although it was eminently proper that he should do so. He might have resorted to other means for ascertaining whether a cause of removal existed; and the refusal to allow counsel is not a fatal objection to the governor's action, as he might have proceeded *ex parte.*

The governor having determined that a sufficient cause for removal existed, and having exercised the power confided to him, relator is without remedy in this proceeding. It is the duty of the courts to uphold the executive power as it has been conferred by the legislature.

The foregoing conclusions find support in the following decisions in addition to those already cited. *Keenan v. Perry*, 24 Texas, 253; *Wilcox v. The People*, 90 Ills. 186; *The People ex rel. Stevenson v. Higgins*, 15 Ills. 110; *State v. Doherty*, 25 La. An. 119; *State v. Hawkins*, 44 Ohio St. 98; *City of Hoboken v. Gear*, 27 N. J. Law, 265; *People v. Whitlock et al.*, 92 N. Y. 191; *State v. McGarry*, 21 Wis. 502.

The judgment of the district court will be reversed and the cause remanded, with direction that judgment be entered for plaintiff in error.

*Reversed.*