## No. 10,043.

### BURBANK, ET AL. v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF EAGLE.

Decided July 5, 1921. Rehearing Denied October 3, 1921.

Action contesting the validity of an election for the removal of a county seat. Election upheld.

### Affirmed.

1. ELECTIONS—Registration—Presumption. The presumption is that election officials have properly discharged their duties and that names appearing upon the registration list are lawfully there. This presumption obtains until the contrary is shown.

2. Statutes—Construction. Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish. When technical rules and strict construction would tend to defeat the will of the people, and change the result of an election, they should not be applied.

Error to the District Court of Eagle County, Hon. James L. Cooper, Judge.

Mr. E. C. STIMSON, Mr. PAGE M. BRERETON, Mr. WILLIAM H. LUBY, for plaintiffs in error.

Messrs. EWING & ARNOLD, Mr. HUME S. WHITE, for defendants in error.

*En banc.*

MR. JUSTICE BAILEY delivered the opinion of the court.

THE cause is here on writ of error to review a judgment of the district court of Eagle County, involving an election on the removal of the county seat from Red Cliff to the town of Eagle. Plaintiffs below, as qualified electors, brought the proceedings against the County Commissioners for that, as is claimed, certain votes cast at the election were illegally cast, and that such votes affected the result to the extent that but for them the town of Eagle would not have been chosen the county seat. Findings and decree were for the Commissioners, the town of Eagle was duly declared the county seat, and the county officers were directed to remove their offices thereto, agreeable to law.

The election was held on the same day the general election of November 2nd, 1920, was held. Special judges, books and ballot boxes were provided, and special lists were made up of electors qualified to vote upon the question, and in all respects the election appears to have been conducted according to the requirements of the statute relating to the location and removal of county seats, sections 1165-1175, R. S. 1908. It is contended, however, that the special registration judges in the precincts of Ruedi, McCoy, Burns and Sheephorn, made a fatal error in preparing their lists of qualified voters, which error it is charged disqualified the voters of those several precincts from participating in the county seat election at all.

Upon the face of the returns the vote was as follows: Red Cliff, 414; Eagle, 1,095; Minturn, 105; Gypsum, 3. At the trial the court found that certain ballots were cast by unqualified persons, and the returns were amended to show: Red Cliff, 405; Eagle, 1,088; Minturn, 105; Gypsum,

3. The total vote, as corrected, was 1,601. The number necessary for choice of county seat is two-thirds of the votes cast, in this case, 1,067⅓. The town of Eagle, having 1,088, was declared chosen, and the removal to that town was ordered by the court.

In the contested precincts 121 votes were cast, of which 119 favored the town of Eagle. It is manifest, if these votes be declared illegal, that the result of the election as announced must be reversed, and the county seat allowed to remain at Red Cliff. The claim of illegality is based upon the following state of facts: In each of the four precincts the situation is the same, and the question at issue may be discussed and determined as a single proposition. It appears that in none of these precincts was the name of any registration judge signed opposite that of any voter, and because of such failure, it is said that no legal registration took place in these precincts, and that therefore no return of votes therefrom can be lawfully counted. There was, however, the usual certificate required by statute attached at the end of the lists, as follows:

"We, the undersigned, composing the Board of Registry for Precinct No. ——, in the County of Eagle, in the State of Colorado, do certify that the foregoing is a correct and true list of the voters in said precinct."

In determining the question involved it is to be noted that there are several ways in which an elector's name may be placed upon the registry list. It may be placed there at any session of the board of registry except the final session; it may be placed there upon the voter's own affidavit, and a properly identified legal voter may make affidavit that the voter is qualified; under these two methods there is no provision that the affidavits shall be preserved. Or if an applicant be known to one or more of the board of registry the judge having such knowledge shall place his name opposite that of the applicant, as evidence of his right to vote. Or at the last session of the board preceding an election the applicant himself and two qualified electors may make affidavits as to his qualifications, and

these are the only affidavits which it is necessary to preserve, or of which any record need be made upon the registration books.

There is no provision in the statute that the evidence of the manner in which the name of a voter is placed upon the list shall be noted or preserved except as above indicated. The election judges are concerned only with the fact that such name is there, and the books properly certified as containing a correct list. The presumption is that officers have properly discharged their duties, and that the names upon the registry are lawfully there. This presumption obtains until the contrary is shown. The names may have been placed upon the lists in any of the four methods outlined above. No notation appearing after the names they may have been placed there upon their own affidavits, or by affidavits of others competent to vote, and if the names in question have been registered by either of these methods all statutory requirements have been literally fulfilled. Under such circumstances the persons on the registry are plainly entitled to vote, unless there be a showing that affirmatively disqualifies them.

It is to be noted that there is no claim even that any unqualified person voted in the precincts contested, or that through failure of one or more of the judges to sign the registry any qualified person was deprived of his vote. Neither is there a claim or any evidence that any name was placed upon the lists in any one of the ways in which the signature of some other person is required to appear thereon. In order to determine that such persons were irregularly registered it is necessary to assume that each was registered by a judge of election and that for some unknown reason in each case the judge failed to subscribe his name. This is so because the books of registry are fair on their face, and carry a certificate signed by all the members of the board of registration; and also, as above noted, because there is no claim or proof that there was the slightest irregularity connected with the placing of the names or any thereof upon the registry list.

In *People v. Earl*, 42 Colo. 238, 94 Pac. 294, in discussing the effect to be given statutes relating to the registry of voters, this court quotes with approval from *Stinson v. Sweeney*, 17 Nev. 309, 30 Pac. 997, as follows:

" 'In other respects where a non-compliance with the provisions of the registry or election laws, upon the part of the registry agent or officers of the election, are not essential 'to preserve the purity of elections,' the courts recognizing the fact that the will of the people, when fairly expressed, should be the law of the land, have universally declared that the qualified electors should not, on that account, be deprived of their votes.'

In other words, we believe that the provisions of the registry law should be strictly construed only when necessary to accomplish the purpose for which they were enacted, to wit, 'to secure the purity of elections.' "

Quoting further from *Contested Election of E. R. Wheelock*, 82 Pa. St. 297, this court continued:

" 'An election is the embodiment of the popular will, the expression of the sovereign power of the people. When the application of technical rules and a strict construction of the acts of the officers, in preparing the election papers and conducting an election, would tend to defeat the will of the people and change the result of an election for an important office, they should not be applied, and all reasonable intendments should be made in favor of the legality of their proceedings.' "

The court then quotes from Cooley on Constitutional Limitations, as follows:

" 'The statutes of the different states point out specifically the mode in which elections shall be conducted; but, although there are great diversities of detail, the same general principles govern them all. As the execution of these statutes must very often fall to the hands of men unacquainted with the law, and unschooled in business, it is inevitable that mistakes shall sometimes occur, and that very often the law will fail of strict compliance. Where an election is thus rendered irregular, whether the irregu-

larity shall avoid it or not must depend generally upon the effect the failure to comply strictly with the law may have had in obstructing the complete expression of the popular will, or the production of satisfactory evidence thereof. Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish; and except where they specifically provide that a thing shall be done in the manner indicated, and not otherwise, their provisions designed merely for the information and guidance of the officers must be regarded as directory only, and the election will not be defeated by a failure to comply with them; providing the irregularity has not hindered any who were entitled from exercising the right of suffrage, or rendered doubtful the evidence from which the result was to be declared.' "

The record fails to show the violation of any provision of the law governing registration, in fact there is nothing to indicate that the registrations under consideration were not effected in minute compliance therewith. The result of the election is manifestly an expression of the popular will of those qualified to vote on the question of the change of county seat, and should not be lightly set aside. For this court to assume that each judge in the several precincts failed to sign opposite the name of such voter, thus making, as is claimed, the vote illegal, would be in conflict with both the letter and spirit of the law. To so hold would have the effect to disfranchise more than one hundred confessedly qualified electors, without fault on their part, and without affording them an opportunity to protect and enforce their constitutional right to vote. The judgment of the district court being clearly right is affirmed.