Joshua M. TWILLEY et al., Plaintiffs,

v.

W. Laird STABLER, Jr., et al., Defendants.

Supreme Court of Delaware.

April 11, 1972.

N. Maxson Terry, Jr., of Terry & Terry, Dover, for plaintiffs.

Kent Walker, State Sol., Wilmington, for defendants.

CAREY and HERRMANN, JJ., and BIFFERATO, Judge, sitting.

CAREY, Justice:

The plaintiffs are presently members of the Kent County Levy Court, representing three of the six Levy Court districts of that county. They filed a declaratory judgment action in the Court of Chancery against the defendants, as State election officials, asking the Court to declare that their terms as members of the Levy Court do not expire until January 1, 1975. They also prayed for an injunction to bar the defendants from permitting any filing as candidates to those offices for the election in November, 1972. The defendants, by counterclaim, requested a declaratory judgment that new Levy Court Commissioners for the three districts must be elected in 1972. The Vice-Chancellor certified these questions to this Court. We accepted certification because of their importance to the electorate of Kent County and because of the need for prompt resolution thereof.

Prior to 1968, extensive litigation took place in the Federal courts concerning the validity of the Delaware apportionment laws for the election of State senators and representatives. These laws were declared violative of the Federal Constitution in Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620. The Federal District Court ultimately approved a reapportionment plan. See Sincock v. Obara, D. C., 320 F.Supp. 1098. That plan was adopted by the Legislature in 1968. 29 Del.L., Ch. 6. It divided Kent County into six representative districts for the purpose of electing members of the House of Representatives. Physical boundaries of each district were specifically set forth in the Statute. The Act provided that there should be another reapportionment following the 1970 census, to be effective for the 1972 elections and thereafter until the next decennial census.

In 1967, an Act was passed by the General Assembly relating to "home rule" for Kent County. It included what is now 9 Del.C. § 304(a), which reads as follows:

"(a) In Kent County, the Levy Court shall consist of not less than 3 nor more than 7 Commissioners, 1 from each of the Representative Districts as these Districts exist at the time of election. Each Commissioner must be a freeholder of the Representative District in which he resides and be elected by a majority vote of the qualified voters of that District. The term of office shall be for 4 years. In order to establish 4 year staggered terms of office so that no more than three Commissioners shall be elected in any one biennial general election, the Commissioners elected at the next biennial general election for the 3 lowest numbered Representative Districts shall serve for a term of 4 years with the remaining Commissioners to initially serve 2 year terms, but these remaining Commissioners shall serve for regular 4 year

terms at each successive election thereafter."

Subsection (c) of that same section provides:

"(c) If, during his term of office, a Commissioner ceases to be a resident or freeholder or qualified voter of his District, his office shall thereupon become vacant, and a temporary Commissioner shall be appointed by the majority vote of the remaining body of Levy Court Commissioners until the special election provided for in section 308 of this title and chapter shall have been completed."

After the census report of 1970, the Legislature revised the boundary lines of all representative districts for the State. The six districts of Kent County were renumbered from 28 through 33 to 30 through 35—a change made necessary by the creation of two additional districts in New Castle County. 58 Del.L., Ch. 280. This realignment is to remain in effect until after the 1980 census.

The plaintiffs here are the three Commissioners elected in 1970 for the four-year term ending January 1, 1975. They were elected to represent the former districts numbered 31, 32 and 33, which, as now constituted are numbered 32, 33 and 35. The defendants contend that the existing statutes have abolished the old districts as of January 1, 1973; that their abolition terminated the offices held by the plaintiffs as of that date; and that, at the 1972 election, Commissioners from all six of the new districts numbered 32 through 35 must be elected.* The plaintiffs disagree and contend that they were elected for a term of four years, and that the statutory revisions do not diminish the period of their tenure.

We turn first to the question of legislative intent. The Statute, § 304(a), expressly fixes in clear and unambiguous language the term of office of these plaintiffs at four years; there is no indication there-

---

* The terms of the Commissioners from the old districts numbered 28, 29 and 30 end on January 1, 1973.

in, expressed or implied, that these terms shall cease before that date.

Defendants suggest that we should find an implied Legislative intent to shorten the term specified in § 304(a). On the contrary, there are implications to be drawn from various enactments which cause us to believe that no such intent existed. The legislative redistricting required changes in other statutes. For example, State senators are, and have been, elected for terms of four years. In order to maintain a system of electing senators for staggered terms, the Legislature set out detailed instructions for their election in 1970, some for four years, others for two years. 29 Del.C. § 608. Similar provisions were not needed for the House of Representatives because its members are always elected for two-year periods. With respect to the New Castle County Commission, an express provision was inserted in the governing Act, 9 Del.C. § 1165, providing that the term of a councilman shall terminate upon the approval of a redistricting ordinance, unless it would otherwise terminate in the following January. These are two instances which clearly show that, when the Legislature has wanted to make an officer's term cease immediately or soon after redistricting, it has made express provision therefor. Its failure to do so with respect to members of the Levy Court of Kent County is at least some indication that it did not intend such a result.

It should also be noted that § 304(a) demonstrates a clear legislative intent to continue the policy of staggered terms of members of the Levy Court, i.e., no more than three Commissioners shall be elected in any one biennial general election. If we were to accept defendants' argument, the result would be a complete abolition of this policy; it would necessitate the election of six Commissioners in 1972, 1976 and 1980—all for four-year terms. This would be directly contrary to the Legislature's intent.

■ In our opinion, assuming that the term of an elected official may constitu-

tionally be terminated by statute, it may be accomplished only by a crystal-clear expression of legislative intent; such a result is not to be read into a statute by implication. This holding is justified by the decision in State ex rel. Craven v. Schorr, Del.Supr., 131 A.2d 158 (1957). These plaintiffs were clearly elected to serve until 1975, and we have found nothing in the pertinent statutes which shows an intent to shorten those terms.

The defendants suggest that T. 9, Del.C., § 304(a) and T. 29, Del.C. §§ 607 and 608 deal with the same general subject matter and must be read together; and that, when they are so read, an ambiguity is created, which we must resolve. We disagree. T. 9, Del.C., § 304(a) is itself plain and unambiguous; its only connection with §§ 607 and 608 is that the numbering and boundaries of the Levy Court districts are to be coterminous with those laid down in §§ 607 and 608 for State representatives. It is significant, we think, that § 304(a) was adopted several months before §§ 607 and 608.

■ Defendants also suggest that this view of § 304(a) results in a violation of the "one man—one vote" principle. It is true that under our ruling, there will be no election in 1972 in the new districts numbered 32, 33 and 35. But this result is brought about simply by the fact that there will be no vacancies to be filled in those districts. We are aware of no decision which *requires* a State to cast a validly elected official out of office prior to the expiration of his term, in order to give the residents of the revised district the opportunity to elect someone else *immediately* after a reapportionment. The plaintiffs have not changed the actual location of their residences; certainly the mere renumbering of their districts is immaterial for present purposes; the relatively minor alterations in the boundary lines is hardly of sufficient consequence to require a new election. In other words, an orderly program of redistricting for Levy Court purposes, involving an arrangement for stag-

gered terms of office, and involving relatively minor alteration of boundary lines, does not require an *immediate* election of new Commissioners and the unseating of those who were elected for a fixed term on the basis of a Court-approved apportionment.

We do not find it necessary at this time to answer two questions presented as to whether these three Commissioners continue to represent the newly-created districts or whether they become Commissioners at large. They will remain in office for two additional years in either event, and it seems unimportant to us what their proper designation may be.

█ Finally, the Court is asked to direct the issuance of an injunction restraining defendants from proceeding contrary to this opinion. Having answered the question which brought about this suit, we see no present need for the actual issuance of an injunction. We have no reason to believe or anticipate that the defendants will act contrary to our decision. Of course, the remedy is always available should it become necessary.