QUESTION PRESENTED AND CONCLUSION
Question: Does article IX, Section 1(1) of the Colorado Constitution require the term of the current at-large member of the State Board of Education, who was elected for a six-year term at the 2000 general election, to terminate upon the commencement of the term of the new member of the State Board of Education to be elected from the Seventh Congressional District at the 2002 general election or may the current at-large member continue to serve on the State Board for a full six-year term?
Answer: Article IX, Section 1(1) of the Colorado Constitution does not require the term of the current at-large member of the State Board of Education, who was elected for a six-year term at the 2000 general election, to terminate upon the commencement of the term of the new member of the State Board of Education to be elected from the Seventh Congressional District. The current at-large member may continue to serve out his full six-year term on the State Board of Education.
 BACKGROUND
Based on the results of the 2000 census, the current six Colorado congressional districts will be reconfigured to make seven districts. Today, the Colorado Board of Education ("Board") has seven members — one from each of the six congressional districts and an additional member elected at-large.
The at-large member of the current Board was elected in the year 2000 general election to serve a six-year term as a statewide, at-large member. He has served only one year of the six-year term he was elected to fulfill. The question posed by the Speaker is whether the term of the current at-large Board member terminates upon the commencement of the term of office of the new member elected as the representative of the new Seventh Congressional District.
 DISCUSSION A. Introduction
The Speaker's inquiry requires consideration and interpretation of several sections of Colorado's Constitution and statutes, including Section 1, Article IX, Section 11, Article XVIII, Section 3, Article XIII, Section 11, Article XII of the Colorado Constitution, and § 22-2-105, C.R.S. (2000).
The provision at the heart of this opinion is Article IX, Section1 of the Colorado Constitution. This section describes in detail the makeup and election of the State Board of Education:
 [The State Board of Education] shall consist of a member from each congressional district of the state and, if the total number of such congressional districts is an even number, one additional member, and said members shall be elected as hereinafter provided. The members of said board shall be elected by the registered electors of the state, voting at general elections, in such manner and for such terms as may be by law prescribed; provided, that provisions may be made by law for election of a member from each congressional district of the state by the electors of such district; and provided, further, that each member from a congressional district of the state shall be a qualified elector of such a district. If the total number of congressional districts of the state is an even number, the additional member of said board shall be elected from the state at-large.
COLO. CONST. art. IX, § 1.
This constitutional provision is echoed and implemented in the Colorado statutes. Section 22-2-105, C.R.S. (2000), provides in part:
 (1) The state board of education shall consist of one member elected from each congressional district in the state and one member elected from the state at-large. . . .
 (2) The member of the state board from each congressional district of the state shall be nominated and elected by the registered electors of such district in the same manner as members of the house of representatives of the congress of the United States are nominated and elected. Each member from a congressional district shall be a registered elector of such district. If the total number of congressional districts of the state is an even number, the additional member of the board shall be nominated and elected at-large in the same manner as state officers are nominated and elected.
(3) [M]embers shall be elected for terms of six years[.] . ..
. . .
 (5) Any vacancies that may occur by reason of death, removal, or resignation from office, or removal from the district from which elected, or when a board member is elected, qualified, and takes office for another state office, shall be filled by the state board[.] . . .
These statutory provisions supply the instructions "provided by law," as called for in Article IX, Section 1 of the Constitution.Cf. Burkholder v. People, 147 P. 347, 348 (Colo. 1915) (the phrase "provided by law" does not include common law in this context).
 B. History of the State Board of Education
In order to redefine the makeup of the State Board of Education, the Colorado Constitution was amended by referendum in 1948 to add Article IX, Section 1. Prior to that change, the Board consisted of the Commissioner of Education, the Attorney General, and the Secretary of State.
The first Board elected under the new Article IX, Section 1 was seated in 1951, and included a member from each of Colorado's four congressional districts. Because Colorado then had an even number of congressional districts, one member of the Board was elected at-large. The lengths of the initial terms on the Board were staggered, and the original members' terms were determined by lottery.
Thus, the initial Board under the amended constitutional provision consisted of five members. The State Board continued to have five members, including one member elected at-large, through 1971.
As a result of the 1970 census, Colorado received an additional congressional seat, bringing the number of districts to five, an odd number. In 1972, the General Assembly enacted House Bill 1109, which was described as "[a]n Act concerning the change of membership of certain boards, commissions, and other agencies resulting from the change in the number of congressional districts in the state of Colorado." This Act declared the following concerning the makeup of the State Board of Education:
 Effective on the second Tuesday in January, 1973, the term of the member at-large shall terminate, and, at the general election held in 1972, the qualified electors of the congressional district not represented on the state board shall elect a member who shall serve for a two-year term commencing on the second Tuesday in January, 1973. Thereafter the member from such congressional district shall be elected for a six-year term.
1972 Colo. Sess. Laws, ch. 98 at p. 552. House Bill 1109 thus purported to end the at-large position, and provided that the new member from the newly created congressional district would fill out the remaining two years of the at-large term. William Israel, the at-large member of the Board prior to 1972, resigned his office and did not contest the legislation.
Growth reflected in the 1980 census resulted in the creation of a sixth congressional district in Colorado. As a result, in 1982 the General Assembly established the current at-large seat on the State Board. Thus, by 1982 the State Board's membership comprised seven members, one elected from each congressional district and one elected at-large. This makeup continues to the present day.
As a result of the 2000 census, the State is again faced with the need to structure a lawful transition from an existing at-large State Board member to a new member representing a discrete congressional district.[1] We assume in this opinion that a member of the Board will be elected in the 2002 general election to represent the new Seventh Congressional District. The Speaker's inquiry is whether the Colorado Constitution requires the termination of the at-large member's term in office.
 C. Legal Analysis
A legal analysis of constitutional transition requirements begins with a review of the language of the Colorado Constitution. That review illustrates that the Constitution is ambiguous concerning the transition issue. Harmonization of the various constitutional provisions that bear on this issue suggests that premature termination of the six-year term of office of the duly elected at-large member is not required.
More importantly, as discussed in sections 3 and 4 below, such premature termination, under these circumstances, is not authorized by law and would probably be legally indefensible.
 1. The Text of the Colorado Constitution Does Not Address Directly the Term of the At-large Member of the Board of Education in the Transition to Purely District Representation
No provision in the Colorado Constitution addresses directly when the term of the at-large member of the Board must end in the circumstances now faced by Colorado. There is no question that, in the 2000 general election, the at-large member of the Board was properly elected to serve a six-year term in accordance with Article IX, Section 1 of the Constitution and C.R.S. § 22-2-105
(both quoted at length on pages 2 and 3 above). The Constitution and statute are similarly clear that no at-large member of the Board is to be elected in the 2006 general election. Beyond those propositions, the Constitution and statute say nothing about the transition from the first circumstance to the second — which covers the time period between the 2000 and the 2006 general elections.
 2. Clauses Within the Constitution Must Be Harmonized When Possible
The Constitution of Colorado states in pertinent part:
 [The State Board of Education] shall consist of a member from each congressional district of the state and, if the total number of such congressional districts is an even number, one additional member[.] . . .
and
 [T]he members of said board shall be elected by the registered electors of the state, voting at general elections, in such manner and for such terms as may be by law prescribed[.] . . .
COLO. CONST. art. IX, § 1.
These separate clauses of Article IX must be harmonized with one another and with other constitutional provisions, if possible, to give effect to each. In re Interrogatories of the U.S. Dist.Court Pursuant to Rule 21.1, 642 P.2d 496 (Colo. 1982); see alsoDe'Sha v. Reed, 572 P.2d 821, 823 (Colo. 1977) 823 (constitution is to be construed "as a whole, including the amendments, giving to each word its proper effect, so far as possible harmonizing each provision with every other"); Cooper Motors v. Board ofCounty Com'rs of Jackson County, 279 P.2d 685, 688 (Colo. 1955) (clauses harmonized when possible to avoid inconsistencies; cautioning courts to "adopt that construction which creates no inconsistency").
 These clauses conflict if the first is interpreted to require the term of the at-large Board member to end prior to the expiration of the six years to which he was duly elected. This interpretation would be at cross-purposes with the call by the second clause for the election of Board members "by the registered electors of the state" and "in such manner and for such terms as may be by law prescribed." At the time of the election of the at-large Board member in 2000, the term in office "prescribed by law" was six years. § 22-2-105, C.R.S. (2000). These clauses would not be harmonized if the term of the at-large member were to be terminated before its expiration. Thus, applying the statutory construction principle that separate clauses should be harmonized, these two clauses lead to the conclusion that the Constitution does not require the at-large member's term in office to be shortened in order to change to purely congressional district representation.
 3. The Law Safeguards the Term of Office of an Elected Official
Strong policies rooted in the democratic election of officials by the People support the idea that the power to remove sitting officials is carefully circumscribed.[2] Removal from office is a grave matter in any circumstance. The removal of a duly elected official is even more significant because it negates the will of the People as expressed through their selection of an elected official. Citizens Utilities Co. v. City of Rocky Ford,289 P.2d 165, 170 (Colo. 1955); accord Burbank v. Board of Com'rs of EagleCounty, 201 P. 43, 45 (Colo. 1921); see also COLO. CONST. art. I, § 3. In the current situation, the at-large member of the Board was elected by the People of the State in the 2000 general election to serve a term of six years.
The Colorado Constitution limits the circumstances pursuant to which an elected official may be removed from office to misconduct or malfeasance by the officeholder:
 All officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office in such manner as may be provided by law.
COLO. CONST. art. XIII, § 3. Neither of these triggering conditions is present in the circumstances examined in this opinion.
Article XII, Section 11 of the Colorado Constitution also indicates that the term of office of a duly elected official's term of office cannot be shortened under the circumstances addressed in this opinion:
 No law shall extend the term of an elected public officer after his election or appointment nor shall the salary of any elected public officer be increased or decreased during the term of office for which he was elected. The term of office of any officer elected to fill a vacancy shall terminate at the expiration of the term during which the vacancy occurred.[3]
COLO. CONST. art. XII, § 11.
While the first clause of Article XII, Section 11 addresses extension of terms and increases or decreases in salary, it does not explicitly address reduction of a term of a duly elected official. Nor have the Colorado courts addressed the issue of the authority to shorten the existing term of office of a duly elected official, absent misconduct or malfeasance. However, the cases are clear that the qualifications for elected officials cannot be changed, added to, or diminished by the General Assembly.[4] Though not directly analogous to the current situation, should the term of the at-large Board member be cut short, these opinions provide some insight as to how the Colorado Supreme Court might rule in the matter.
Research reveals very limited case law addressing a state legislature's general power to cut short an official's term in office. Sincock v. Gately, 262 F. Supp. 739, 844 (D.Del. 1967), involved review of a Delaware constitutional provision similar to the first clause of Article XII, Section 11 of the Colorado Constitution.[5] The Delaware court found the purpose of this constitutional provision was to "safeguard the terms of public officers . . . and to deny to a legislature the power to deprive an incumbent of an office to which he has been duly elected." Seealso, Twilley v. Stabler, 290 A.2d 636, 638 (Del. 1972) (refusing to cut short a term in office because no clear legislative intent to do so is expressed; avoiding the issue of the power of the legislature to do so in the first instance).
However, as discussed in section 4 below, both the legislative and judicial branches of government have recognized that, following fundamental changes in representation and district boundaries flowing from new census results, a period of transition is acceptable. This recognition is firmly embedded in our law and counsels in favor of interpreting the text of Article IX, Section 1 in such a manner as would allow the General Assembly discretion to develop a reasonable transition procedure. To interpret the language of Article IX, Section 1 in a more rigid manner would open a Pandora's box calling into question the legality of other statutory transition laws, such as Section 24-1-135(2) of the Colorado Revised Statutes.[6]
Constitutional interpretation should comport with the expressed will of the People of Colorado. The People elected the current at-large member of the Board to serve a six-year term. This fact is beyond dispute and application of an interpretation that would prematurely terminate this six-year term would undercut this choice by the voters.
 4. The General Assembly Has Formally Addressed These Transition Issues In Other Situations and the Courts Have Recognized That Temporary Arrangements to Address Redistricting Changes Are Constitutional.
Transition problems often arise following redistricting, when newly elected representatives assume the seats of incumbent officers or district boundaries are significantly changed. Because they recur, the General Assembly has formally addressed these difficulties. The legal principles established by statute and redistricting cases demonstrate that the General Assembly could statutorily provide for a transition of the State Board of Education to consist of eight members through the 2006 general election, at which time the number of Board members would return to seven, with a representative elected from each of the seven Congressional Districts and no at-large representative.
This type of transition problem is addressed in § 2-2-104 of the Colorado Revised Statutes:
 Nothing in this part 1 shall be construed to cause the removal of any senator from his office for the term for which he was elected, but each such senator shall serve the term for which he was elected.
§ 2-2-194, C.R.S. (2000).
Section 24-1-135(2) is of like effect. It reads in pertinent part:
 Any member of a board, commission, or committee who was appointed or elected to such office as a resident of a designated congressional district pursuant to . . . sections . . . 22-2-105 . . . and who no longer resides in such congressional district solely because of a change made to the boundaries of such district subsequent to the 1990 federal decennial census, is eligible to hold office for the remainder of the term to which the member was elected or appointed, notwithstanding such nonresidency.
§ 24-1-135(2), C.R.S. (2000).
Both provisions safeguard the ability of the existing official to serve out his or her term of office before changes due to the census are begun. Both provisions also show that the General Assembly recognizes it has discretion to fashion a transition remedy, so long as it does not violate constitutional protections.
More importantly, the General Assembly included Section 22-2-105
(Board of Education) as one of the boards whose duly elected members' terms of office would be protected by the provisions of the statute. As set forth on pages 2 and 5 of this opinion, Article IX, Section 1 of the Colorado Constitution explicitly requires that "each member from a congressional district of the state shall be a qualified elector from such district." By including the Board of Education members as one of the protected groups who were eligible to continue to hold office even though they no longer resided in the district because of a change in congressional district boundaries, the General Assembly explicitly waived, for transition purposes, the express constitutional requirement that each member of the Board of Education "shall be a qualified elector from such district." If the General Assembly can legislate such a temporary "waiver" of an express constitutional requirement relating to qualification for office, the General Assembly surely has the authority to temporarily "waive," during the transition period, the more general provision requiring an odd number of members on the Board of Education.
The legal principles in redistricting remedy cases are also analogous to the context of the transition issues addressed in this opinion. The redistricting remedy cases begin with the assumption that fundamental constitutional equal protection violations — including violations of the one-man, one-vote principle — have been proven to exist if the harm complained of continues. The courts, nevertheless, allow the legislature considerable discretion to fashion reasonable transition procedures, including allowing the "violation" to continue for a period of time so that a pragmatic and reasonable adjustment can be made from one districting system to a new one.
For example, in the landmark opinion in Reynolds v. Sims,377 U.S. 533, 585 (1964), the United States Supreme Court found that the state's reapportionment plan unconstitutionally violated the Equal Protection Clause, but went on to explain that equitable considerations justified some delay in implementation of the remedy. See also, French v. Boner, 963 F.2d 890 (6th Cir. 1992),cert. denied, 506 U.S. 954 (1992) (court noted that, inevitably, elections for terms in excess of four years occurring on the cusp of the decennial census might result in unequal representation in the sense that the old districts no longer met the one-person, one-vote test under the new census, but found that mathematical equality was not required at all times during the census and election cycles); Political Action Conference of Illinois v.Daley, 976 F.2d 335 (7th Cir. 1992) (upholding reasonable transition remedies); Republican Party of Oregon v. Keisling,959 F.2d 144 (9th Cir. 1992), cert. denied, 504 U.S. 914 (1994) (holding that, in the context of reapportionment, a temporary dilution of voting power that does not unduly burden a particular group does not violate the Equal Protection Clause).[7]
The same flexibility exists under the Colorado Constitution. InKallenberger v. Buchanan, 649 P.2d 314 (Colo. 1982), a state senator elected in 1980 for a term of office to expire in 1985 resigned four years earlier, in 1981. In accord with state law, another person was appointed to fill the vacancy until the 1982 general election. In the meantime, the state reapportioned and redrew the boundaries of the senate district, and the General Assembly designated the election date for the new district as 1984. In 1982, the Democratic candidate in the vacancy election sued, alleging that the election in 1982 had to be conducted under the new district boundaries pursuant to the one-person, one-vote rule of Reynolds v. Simms.
The Colorado Supreme Court disagreed, holding that the plaintiff was not contesting the constitutional validity of holdover senators. Rather, he merely contended that since a vacancy election was scheduled for 1982 anyway, the voters of the new district should fill the vacancy. However, the Court noted that the old district had never been declared unconstitutional; it was simply replaced in the reapportionment process mandated by the Colorado Constitution. The Court noted that holdover representation was constitutional, and found that this constitutionality was not altered in any significant way by the intervening vacancy election. The Court noted that although the complexities of reapportionment may result in a delay of the opportunity of some persons to vote for a senator, none of these persons would be without an identifiable senatorial representative between January 1983 and January 1985. 649 P.2d at 317. The Court found that any other result would create needless confusion by casting doubt on the validity of district boundaries. Id. at 318.
Finally, the Colorado Supreme Court has held that when circumstances are appropriate, delaying a new district's vote is not a constitutional violation:
 [T]he complexities of the reapportionment process may result occasionally in a six-year delay of the opportunity of some persons to vote for a [state] senator. Where this result is absolutely necessary, it does not constitute a constitutional deprivation unless the change is shown to be the result of an invidious discrimination.
In re Reapportionment of Colorado General Assembly, 647 P.2d 191,198 (Colo. 1982).[8]
In contrast to the fundamental constitutional violations addressed in the redistricting cases, the potential constitutional "violation" addressed in this opinion is a transition time period when the Board might have an even number of members rather than an odd number of members. The harm from the latter situation is much less significant than the harm addressed in the redistricting cases. Therefore, while the Colorado Constitution contemplates that the State Board of Education will contain an odd number of members, presumably to avoid ties in Board voting, a temporary transition period in which the Board contains an even number of members is constitutionally permissible.
 CONCLUSION
Article IX, Section 1(1) of the Colorado Constitution does not require the term of the current at-large member of the State Board of Education, who was duly elected to a six-year term at the 2000 general election, to terminate upon the commencement of the term of the new member of the State Board of Education to be elected from the Seventh Congressional District. It is constitutionally permissible for the current at-large member of the Board to serve out the remainder of his six-year term. In this case, the Board of Education will have an even number of members in the interim period. That situation is temporary, until the at-large Board member's term expires according to the terms of the law in place at the time he was elected.
Issued this 6th day of August, 2001.
KEN SALAZAR Attorney General
CHRISTINE M. ARGUELLO
Chief Deputy Attorney General
ALAN GILBERT Solicitor General
TERRY FOX Assistant Attorney General
 FOOTNOTES
[1] House Bill 01-1368 was introduced during the 2001 session of the General Assembly to address the transition structure. The bill would have required one member of the Board to be elected from the new Seventh Congressional District for an initial four-year term in the 2002 general election. Under the bill, the term of the at-large member was to terminate in January of 2003, and the member elected from the Seventh Congressional District was to replace the at large member and fill out the remaining four years of his term. H.B. 01-1368 did not become law. For the reasons set forth in Section C.3. of this opinion, had this bill passed, it is questionable whether it would have withstood legal challenge.
[2] In appropriate circumstances, the power of the legislature to provide for the manner of removing officers has long been recognized in Colorado. Trimble v. People, 19 Colo. 187, 34 P. 981
(1893). It is axiomatic that this power must be exercised in accord with constitutional limitations.
[3] The second clause addresses a vacancy in office, a situation not present in the situation examined in this opinion. Nevertheless, it, too, is a precise expression of the limitations on the power of the General Assembly to adjust terms of office.
[4] In Jackson v. State of Colorado, 966 P.2d 1046, 1051 (Colo. 1998), the Colorado Supreme Court concluded that constitutional qualifications for the office of sheriff were exclusive, and that the General Assembly had no authority to impose additional qualifications. In Reale v. Board of Real Estate Appraisers,880 P.2d 1205, 1211 (Colo. 1994), the Supreme Court held that "[t]he Colorado Constitution reserves no authority in the state legislature to change, add to, or diminish the qualifications for constitutionally created offices."
[5] The Delaware provision states:
 No law shall extend the term of any public officer nor diminish his salary or emoluments after his election or appointment.
DEL. CONST. art. XV, § 4.
[6] See discussion of this statute on pages 8 and 9 of this opinion.
[7] Holdovers of elected officials after reapportionment have been upheld in California (Visnich v. Sacramento County Board ofEducation, 112 Cal.Rptr. 469 (Cal.App. 1974); Griswold v. Countyof San Diego, 107 Cal.Rptr. 845 (Cal.App. 1973); Legislature ofState of California v. Reinecke, 110 Cal.Rptr. 718 (Cal. 1973)), in Delaware (Twilley v. Stabler, 290 A.2d 636 (Del. 1972)), in Indiana (Stout v. Bottorff, 249 F. Supp. 488 (D. Ind. 1965)), in Michigan (New Democratic Coalition v. Austin, 200 N.W.2d 749
(Mich.App. 1972)), in Nebraska (Barnett v. Boyle, 250 N.W.2d 635
(Neb. 1977)), in Oregon (McCall v. Legislative Assembly,634 P.2d 223 (Or. 1981), superceded by constitutional amendment (1986)), and in Texas (Carr v. Brazoria County, Texas, 341 F. Supp. 155
(S.D. Tex. 1972), aff'd mem., 468 F.2d 950 (5th Cir. 1972);Robinson v. Zapata County, Texas, 350 F. Supp. 1193 (S.D. Tex. 1972); Pate v. El Paso County, Texas, 337 F. Supp. 95 (W.D. Tex. 1970), aff'd mem., 400 U.S. 806 (1970); and Childress County v.Sachse, 310 S.W.2d 414 (Tex.Civ.App. 1958)).
[8] Other Attorneys General have opined in similar circumstances. The Attorney General of Montana addressed the flexibility of the Legislature to address reapportionment transitions in 40 Mont. Op. Att'y Gen. No. 1:
 The majority of courts have held that where the term of an elected official runs beyond the reapportionment year, the official may be held over for the duration of the term for which he or she was elected without resulting in a violation of the notions of equal protection and representative government.
The Attorney General of Maine upheld the constitutionality of delayed implementation of a reapportionment plan permitting elected officials to complete their four-year terms of office in Me. Op. Att'y Gen. No. 84-11. This opinion declares that federal law does not:
 require a State to [take] a validly elected official out of office prior to the expiration of his term, in order to give the residents of the revised district the opportunity to elect someone else immediately after a reapportionment.
Id., at 1 (citing Twilley v. Stabler, 290 A.2d 636, 638 (Del. 1972)). Finally, in Ky. Op. Att'y Gen. No., the Kentucky Attorney General upheld the term in office of magistrates affected by new district lines. The opinion says, "The impact of reapportionment cannot reduce the term of the at-large member of the Board of Education."