**TARRANT COUNTY, Texas, et al., Appellants,**

v.

**Bob ASHMORE, et al., Appellees.**

No. 18555.

Court of Appeals of Texas, Fort Worth.

Nov. 5, 1981.

Rehearing Denied Dec. 10, 1981.

Frederick M. Schattman, Fort Worth, for appellants.

Farrar & Claunch, Jim Claunch, Dickens & Paddock, Charles Dickens, Fort Worth, for appellees.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

This is an appeal from a judgment that (1) a redistricting plan ordered by the county commissioners court deprived incumbent justices of the peace and constables of their terms of office without due process of law; and (2) the dispossessed officeholders are entitled to receive salaries and benefits for the remainder of their original terms of office.

We affirm.

Appellees were Tarrant County justices of the peace and constables who had been duly elected and were serving terms of office ending on either December 31, 1982, or December 31, 1984.

Using the redistricting powers vested in them by Tex.Const. art. 5 § 18 (1971) and Tex.Rev.Civ.Stat.Ann. art. 2351½(c), the appellant commissioners court held hearings to redefine the precincts then being served by the appellees.

Following six public hearings, the commissioners court abolished the existing precincts and declared the appellees' offices vacant, effective January 1, 1981.

Appellees sued for a declaration as to whether the commissioners' action is valid; whether art. 2351½(c) is constitutional; and for damages equal to the salaries and benefits of their respective offices for the remainder of their original terms.

The trial court judgment held art. 2351½ to be constitutional and that the Tarrant County commissioners court has the power to redistrict and declare vacancies and to fill those vacancies.

The court also held that each appellee has a property right in his office and may not be deprived of that right without due process of law and just compensation. The county was ordered to pay salary, benefits and emoluments of office to each appellee for the unexpired portion of their respective terms.

■ Appellees present no cross-point now challenging the constitutionality of art. 2351½, so we do not entertain that question. Acts of the legislature are presumed constitutional, and the courts will not anticipate a constitutional issue. *Bush v. State of Texas*, 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); *Vernon v. State*, 406 S.W.2d 236 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.).

Both the appellants and appellees rely upon language in Tex.Const. art. 5 § 18. It states that an elected justice of the peace or constable "shall hold his office for four years and until his successor shall be elected and qualified."

The same section vests the commissioners court with authority to divide the county into precincts and to revise those precincts "from time to time, for the convenience of the people."

Once those revisions are made, they are governed by art. 2351½(c), which states:

"(c) When boundaries of justice of the peace precincts are changed, so that existing precincts are altered, new precincts are formed, or former precincts are abolished, if only one previously elected or appointed justice of the peace or constable resides within a precinct as so changed, he shall continue in office as justice or constable of that precinct for the remainder of the term to which he was elected or appointed. If more than

one justice or constable resides within a precinct as so changed, or if none resides therein, the office shall become vacant and the vacancy shall be filled as other vacancies; provided, however, that in precincts having two justices, if two reside therein, both shall continue in office, and if more than two reside therein, both offices shall become vacant."

The appellees were evicted from office pursuant to art. 2351½(c). Some were reappointed; some were not.

The appellees suit challenged the commissioners redistricting order denying appellees the right to complete their terms of office as being a deprivation of their property in violation of Tex.Const. art. 1 § 19, which provides:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

■ Our initial inquiry then is whether any constitutionally cognizable property interest is involved. *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

■ Public office in this state is property, and a duly elected incumbent has a vested right to the possession of the office and enjoyment of its rights and emoluments. Such rights are protected by the constitution and will be enforced by the courts. *Taylor v. Nealon*, 132 Tex. 60, 120 S.W.2d 586 (1938); *McGuire v. Hughes*, 452 S.W.2d 29 (Tex.Civ.App.—Dallas 1970, no writ).

Appellants contend that their redistricting actions were accomplished in accord with due process. In their first point of error, appellants alternately assert that there was no evidence, and insufficient evidence, to support the court's finding that due process was denied.

Thus our next inquiry is to determine exactly what process is due under the facts of this case and whether the appellees were accorded less than the degree of procedural protection required. *Ingraham v. Wright, supra.*

The scope of due process was concisely reviewed in *Cantu v. Parr*, 338 S.W.2d 182 (Tex.Civ.App.—San Antonio 1960, writ dism'd w.o.j., 340 S.W.2d 481, Tex. 1960), at 185, 186:

"Since the famous case of *Trustees of Dartmouth College v. Woodward*, 4 Wheat 518, 4 L.Ed. 629, it has generally been conceded that the due process of law is 'A law which hears before it condemns, which proceeds upon inquiry and renders judgment only afterwards.'

" 'Due process of law' is required by both our Federal and State Constitution. The fourteenth amendment of our Federal Constitution provides, among other things, that:

" 'Nor shall any State deprive any person of life, liberty, or property, without due process of law.'

"Texas Constitution, Art. 1, § 19, Vernon's Ann.St. provides [see verbatim quote, supra]. This applies to the legislature as well as the judicial branch of our State government. In 12 Am.Jur. p. 283, § 586 it is stated:

'The requirements of due process of law extend to every case of the exercise of governmental power. The limitations inherent in the requirements as to due process of law are binding equally on the United States and on the several states.

" 'A state may not by any of its agencies, legislative, judicial, or executive, disregard the constitutional prohibition. The inhibition includes all functionaries of state government, judicial as well as political.' ..."

■ Judicial courts have noted the mixture of powers possessed by Texas commissioners courts. Some of those powers are legislative, while others are executive, administrative, or judicial. *Avery v. Midland County*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).

In its own opinion in *Avery*, 406 S.W.2d 422 (1966), the Texas Supreme Court observes, at 426:

"The county is a subordinate and derivative branch of state government . . . . The appellation 'court' is a misnomer in the accepted meaning . . . . The primary function of the commissioners court is the administration of the business affairs of the county . . . . Its legislative functions are negligible and county government is not otherwise comparable to the legislature of a state or to the federal Congress . . . ."

We conclude that while art. 5 § 18 of the Constitution empowers the commissioners court to redistrict the county, the execution of that authority must accord due process to the incumbents whose elective offices may be abolished.

Every arm of government having the authority and power to implement its decisions by taking away vested property rights must adhere to a fundamental principle of justice. That is, those rights may not be prejudiced without first giving the owner of those rights due notice and an opportunity to defend his rights. *Masonic Grand Chap. of Order of East. Star v. Sweatt*, 329 S.W.2d 334 (Tex.Civ.App.—Fort Worth 1959, writ ref'd n.r.e.).

Basic fairness and due process in this case would dictate notice to each duly elected and vested incumbent in advance of the hearings, informing of (a) the time, place and location of each hearing, (b) the specific subject matter to be considered, (c) the possibility that their vested offices may be terminated prematurely, (d) the absence of assurance that any incumbent would be allowed to retain office, (e) the possibility that none of the incumbents would be appointed to fill vacancies in offices for the new precincts, (f) the possibility that each would be denied the salary and benefits of office for the unexpired portion of his original term, and (g) the right to appear and defend their vested rights and to show cause why their offices should not be abolished prematurely without compensation. There is no evidence that such notice was given, either before or during any of the hearings.

A review of the evidence shows that the district attorney's office mailed letters to the appellees, informing them that the commissioners court had scheduled public meetings at certain times and places to consider redistricting the appellees' precincts.

Testimony also shows that notice of each meeting's agenda was posted as required by Tex.Rev.Civ.Stat.Ann. art. 6252–17 § 3A (1970), commonly called the Open Meetings Act.

We hold that the letters and posted notices did not meet the requisites of due process to which the appellees were entitled.

In examining the record, this court finds no evidence that any appellee attending a hearing was there informed that he might neither be retained in office nor reappointed; nor that the contemplated action might take away the salary and benefits of office already vested.

The evidence shows that the hearings functioned as forums in which proposed geographic revisions of precinct lines were generally considered and evaluated. There is no evidence that any hearing functioned as a forum in which to take away permanently the elected office and vested property rights of any specific incumbent. After the final hearing, however, appellees vested rights were taken away by order of the appellant commissioners court.

Appellants' no evidence point required us to consider only the evidence supporting the trial court's finding as to lack of due process; and we must disregard all contrary evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Butler v. Hanson*, 455 S.W.2d 942 (Tex. 1970).

Having done so, we find there was evidence to support the finding that appellees did not receive due process.

Appellants' same point of error complains that the evidence was insufficient to find a lack of due process, and that such finding was against the great weight and preponderance of the evidence.

After considering all of the evidence, both that tending to prove, and that tending to disprove, adherence to due process, we conclude that the court's finding that the appellees were not accorded due process was correct.

There was sufficient evidence to support the finding, which was not contrary to the great weight and preponderance of the evidence in the record.

Appellants' first point of error is overruled.

In their second point, appellants assert as error the trial court's refusal to allow witness John L. Bean to testify relative to notice and substance of the meetings and attendance by the appellees.

■■■ Appellants, however, filed no bill of exceptions as provided in Tex.R.Civ.P. 372. In the absence of a bill of exceptions showing what the excluded testimony would have been, no reversible error is shown. *Muller v. Reeher*, 520 S.W.2d 599 (Tex.Civ. App.—Fort Worth 1975, no writ); *Phillips v. Phillips*, 511 S.W.2d 748 (Tex.Civ.App.— San Antonio 1974, no writ).

Appellants' second point of error is overruled.

Their third point asserts that, as a matter of law, the appellees are not entitled to damages. We cannot agree.

If we are to view art. 2351½(c) as being compatible with our state constitution, we cannot construe the statute as indulging the divestment of constitutionally vested rights without just compensation.

■■■ We do not believe that art. 2351½ (c) sanctions using the vehicle of redistricting to take from public officials property rights that have already become vested for the duration of the terms to which the voters elected them.

An unbridled power to divest precinct officeholders in midterm "for convenience of the people" could invite political chicanery and undermine the electoral process and will of the voters. We cannot ascribe that intent or effect to art. 2351½(c) or to art. 5, § 18 of the Constitution.

The appellees did not seek to regain their offices which were abolished or are now held by others. They sought and were awarded compensation for the rights prematurely taken from them.

■■■ We hold that, having been duly elected and vested with a constitutional term of four years in office, each appellee is likewise vested with the right to receive the salary and benefits payable for the duration of the term to which he was elected. *McGuire v. Hughes, supra.* Accordingly, appellants' third point of error is overruled.

The fourth point is that the judgment's award of compensation to the appellees does not name a sum certain, and the appellant county cannot determine the extent of its liability.

As to the appellees who have not been reappointed to office, there was testimony as to the amount of salary and other compensatory benefits of the offices to which they were elected. That evidence is uncontroverted, and the fact and date of each appellee's election was stipulated by the parties.

In its judgment, the trial court found that appellees Ashmore, T. Sheffield, Blevins, Forbes, Stank, E. Sheffield, Gray and Richard Craig were those whose elected terms end December 31, 1982.

The judgment orders the appellant county to pay each of those appellees "his full salary and benefits including future cost of living increases afforded other County officeholders during the remaining two years of his term of office."

The judgment also provides that (a) any of those appellees who are reappointed to office but decline to serve will waive his right to compensation and (b) to any such appellee who is reappointed at a compensation less than that of his elected office, the county shall pay the difference.

The trial court found that appellees Bruce Lee, Perez, Robert Craig, Ferris, Meador, Patty, Daniel, Gorman, Howeth and C. Doyle Lee were those whose elected terms end on December 31, 1984.

The judgment orders the appellant county to pay each of those appellees "his full

**746**

salary and benefits including future cost of living increases afforded other county officeholders for the four years to which he was elected to office."

As to the latter group of appellees, the judgment specifies the same waiver and differential provisions as for the first group.

However, as to each appellee whose elected term ends December 31, 1984, the judgment provides that if he runs for office in 1982, and is defeated, the county shall pay his "full salary and benefits and emoluments of office for the remaining two years of the original four year term to which he was elected."

As to all appellees, the judgment orders that the salaries, benefits and emoluments shall be paid "in the same manner and at the same times that all other public officials of Tarrant County, Texas, are paid."

■ Taking into consideration, as we must, the pleadings, evidence and relationship of the parties, we hold that the judgment is sufficiently definite to constitute a final judgment and to enunciate the county's liability. *Ferguson v. Ferguson*, 161 Tex. 184, 338 S.W.2d 945 (1960); *Thaxton v. Houston National Bank*, 439 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ).

The fourth point of error is overruled, and judgment of the trial court is affirmed.