**TARRANT COUNTY et al., Petitioners,**

v.

**Bob ASHMORE et al., Respondents.**

**No. C–985.**

Supreme Court of Texas.

June 23, 1982.

Rehearing Denied July 21, 1982.

Tim Curry, Crim. Dist. Atty., Frederick M. Schattman, Asst. Dist. Atty., Fort Worth, for petitioners.

Farrar & Claunch, Jim Claunch and Roy Basham, Charles Dickens, Fort Worth, for respondents.

POPE, Justice.

Bob Ashmore and others, all Tarrant County justices of the peace and constables threatened with removal from office by the redrafting of precinct boundary lines, brought this action for damages and for declaratory and injunctive relief against the Tarrant County Commissioners Court. The claims asserted in the suit were based upon alleged violations of procedural due process, and upon the purported rights of duly elected officeholders to complete their full terms of office. In response to these claims, the commissioners argued that their actions were authorized by Tex.Rev.Civ.Stat.Ann. art. 2351½, which then allowed commissioners courts to declare certain offices abolished or vacated when precinct lines were

redrawn.[1] The trial court held that, while article 2351½(c) was a constitutional means of removing officers from their positions, the procedures used by the Tarrant County Commissioners to accomplish that purpose in the present case were inconsistent with the officers' property rights and rights of due process. As a result, the court held, the officers were entitled to recover from the county the salaries and benefits they would have earned had they been allowed to remain in office for their full terms. The court of appeals affirmed the judgment of the trial court. 624 S.W.2d 740. We reverse the judgments of the courts below.

In the spring of 1980, the Commissioners Court of Tarrant County began the process of examining the justice and constable precincts in the county with a view toward complying with a federal district court redistricting order. *See Bagsby v. Moncrief,* No. CA–4–79–24k (N.D.Tex.1979). The last redistricting of Tarrant County had taken place in 1876, and a wide disparity between precinct populations existed.[2] After receiving a proposed redistricting plan prepared by a demographic expert hired to study population trends in the county, the commissioners held five public hearings on consecutive nights in early August 1980 in order to solicit public comment. On August 25, the commissioners adopted the proposed plan, and concurrently ordered that all jus-

tice and constable precincts and each of the offices located therein be abolished effective January 1, 1981, so that the newly defined offices could be filled by appointment.

The present action was filed on December 16, 1980, by three justices of the peace and one constable seeking damages and injunctive and declaratory relief. Thereafter, on December 19, the trial court ordered the joinder of all other justices and constables in the county as involuntary plaintiffs.[3] Trial was held on December 30 and 31. While it was clear to the participants during trial that all justice and constable positions had been vacated, it was not certain at that time whether any incumbent or recently elected officer would be appointed to serve in any of the newly drawn precincts, since the commissioners court planned to make the appointments on the evening of December 31.

The trial court ruled on January 9, 1981, that article 2351½ was constitutional, that the commissioners court had the power to redistrict and declare the offices of the justices and constables vacant, and that the vacancies could be filled by appointment. Notwithstanding the finding of validity of article 2351½, however, the court held that the officers had property rights in their offices and were deprived of such property

1. Article 2351½ then provided:

(c) When boundaries of justice of the peace precincts are changed, so that existing precincts are altered, new precincts are formed, or former precincts are abolished, if only one previously elected or appointed justice of the peace or constable resides within a precinct as so changed, he shall continue in office as justice or constable of that precinct for the remainder of the term to which he was elected or appointed. If more than one justice or constable resides within a precinct as so changed, or if none resides therein, the office shall become vacant and the vacancy shall be filled as other vacancies; provided, however, that in precincts having two justices, if two reside therein, both shall continue in office, and if more than two reside therein, both offices shall become vacant. This portion of the statute was deleted by recent amendment. *See* 1981 Tex.Gen.Laws, ch. 280, § 1, at 748. Article 2351½ now provides:

(b) When boundaries of commissioners or justice precincts are changed, the terms of office of the commissioners, justices of the peace, and constables then in office shall not be affected by such change, and each of them shall be entitled to serve for the remainder of the term to which he was elected even though the change in boundaries may have placed his residence outside of the precinct for which he was elected.

2. For example, the largest justice precinct in Tarrant County in 1977, precinct one, contained 402,730 persons; the smallest precinct, precinct eight, had a population of only 12,638.

3. Of the ten justices in Tarrant County, eight were in office at the time of suit, with terms expiring December 31, 1982. Two justices had been elected in November 1980 but were not due to take office until January 1, 1981. All of the eight constables were to begin new terms on January 1, 1981.

rights by the commissioners court without just compensation or regard for due process. As a result, the court held, the justices and constables were entitled to full salary and benefits, including any future cost of living increases afforded other county officials, for the remainder of their elected terms.[4]

The court of appeals affirmed the judgment of the trial court. In so doing, the court agreed that the precinct officers had a property right in their offices and held that the redrafting of precinct boundaries must in all cases accord due process to the incumbents whose elective offices may be abolished. The court also held that, even if article 2351½ was a valid and constitutional statute, it should not be construed as providing for the loss of a valuable property right—the right to complete an elected term of office—without just compensation. Recovery for lost salaries and benefits for the unexpired terms was therefore affirmed.

### Taking of Property

We are aware that article I, section 17, of the Texas Constitution provides that "[n]o person's property shall be taken ... without adequate compensation ...." Additionally, the fifth amendment to the United States Constitution, made applicable to the states by way of the fourteenth amendment, concludes with the words: "nor shall private property be taken for public use, without compensation." We agree that these provisions stand as a shield between the exercise of governmental power and the rights of all citizens to own and enjoy property. We do not agree with the court of appeals, however, that the public officers in the present case had a "property" interest in their positions such that vacating the offices prior to the end of their terms resulted in a constitutionally recognizable "taking" of property without compensation.

■ The nature of public office has long been a point of analysis and discussion in

Texas. Early courts described the elected and appointed position as "the right, authority, and duty created and conferred by law by which, for a given period either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government to be exercised by him for the benefit of the public." *Kimbrough v. Barnett*, 93 Tex. 301, 310, 55 S.W. 120, 122 (1900), *quoted in Commissioners' Court of Limestone County v. Garrett*, 236 S.W. 970, 972 (Tex.Comm'n App.1922, judgmt adopted). As the foregoing passage indicates, public offices began to be described properly by Texas courts not in terms of a "contract," "employment," "ownership," or "possession," but rather as a "trust," "duty," and "public benefit." In other words, stated briefly, public office came to be seen in Texas not as a *right*, but as a *responsibility*. In *State ex rel. Maxwell v. Crumbaugh*, 63 S.W. 925, 927 (Tex.Civ.App. —San Antonio 1901, writ ref'd), for example, the court stated:

A public office is not "property," within the meaning of the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law." It is a mere public agency, revocable according to the will and appointment of the people, as exercised in the constitution and the laws enacted in conformity therewith. *Moore v. Strickling* (W.Va.) [46 W.Va. 515], 33 S.E. 274, 50 L.R.A. 279. In the case cited the court in its opinion makes ... the following quotation: "It is impossible to conceive how, under our form of government, a person can own or have a title to a governmental office. Offices are created for the administration of public affairs. When a person is inducted into an office he thereby becomes empowered to exercise its powers and perform its duties, not for his, but for the public, benefit. It would be a misnomer and a perversion of terms to say that an incumbent owned an office or had any title to it."

---

4. The judgment provided that any officeholder appointed to the same or similar position who declined to serve would waive his rights to

recovery. The record does not reveal what dispossessed officers, if any, were reappointed by the commissioners court.

It may be concluded, therefore, that a fundamental principle associated with our republican form of government is that every public officeholder remains in his position at the sufferance and for the benefit of the public, subject to removal from office by edict of the ballot box at the time of the next election, or before that time by any other constitutionally permissible means.

The decision in *State ex rel. Maxwell v. Crumbaugh, supra,* in declining to identify a public office as the "property" of the officeholder, is in line with the majority rule in other jurisdictions. *See* Annot., 172 A.L.R. 1366 (1948); 99 A.L.R. 336 (1935); 4 A.L.R. 205 (1919). In the early case of *Taylor v. Beckham,* 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900), the United States Supreme Court was asked to settle a contest over the offices of governor and lieutenant governor of the State of Kentucky. The defendant officeholders in that suit, who were the losers of an election contest conducted in the state's general assembly, sought to retain their positions by asserting a property right to the office and the benefits attached thereto. The Supreme Court responded negatively to this contention by stating:

> The view that public office is not property has been generally entertained in this country.
>
> \* \* \* \* \* \*
>
> The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. Nor does the fact that a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent change its character or make it property. True, the restrictions limit the power of the legislature to deal with the office, but even such restrictions may be removed by constitutional amendment. In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.

*Id.* at 576–77, 20 S.Ct. at 900–901. The holding of the Court in *Taylor* was subsequently reaffirmed in the case of *Cave v. Missouri ex rel. Newell,* 246 U.S. 650, 38 S.Ct. 334, 62 L.Ed. 921 (1918) (per curiam), and again in *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 1090 (1944).

In *Edge v. Holcombe,* 135 Ga. 765, 70 S.E. 644 (1911), the Supreme Court of Georgia reiterated the majority position expressed by the United States Supreme Court:

> We will only observe that a careful study of the cases discloses that in the early history of the English jurisprudence the right to hold office was regarded as a property right, and many decisions were made in recognition of this principle; but the American courts now uniformly hold that an office, relatively [sic] to the government, is a public trust, and not a property right. Where an office is created by the Legislature, the power which created it may fix its term and provide for the sooner determination thereof, and the officer takes the office with this limitation.

Similarly, in *Smith v. Thomson,* 219 Iowa 888, 258 N.W. 190, 193 (1934), the court stated:

> [I]t must be conceded, as a general rule, that the relation between a public officer and the people is not in the nature of a contract, and that such office has in it no element of property. It is a public trust, created for the benefit of the state, and not for the benefit of the individual citizens thereof, and the prospective emoluments of a public office are not property in any sense.

The same rule has been repeated many times in many jurisdictions. *See, e.g., Cosby v. Moore,* 259 Ala. 41, 65 So.2d 178, 181 (1953); *Trimble v. People,* 19 Colo. 187, 34 P. 981 (1893); *Kirkpatrick v. King,* 228 Ind. 236, 91 N.E.2d 785, 788–89 (1950); *Lanza v. Wagner,* 11 N.Y.2d 317, 229 N.Y.S.2d 380, 183 N.E.2d 670, 673 (1962); *Simmons v. Elizabeth City,* 197 N.C. 404, 149 S.E. 375, 376 (1929); *Wright v. City of Florence,* 229 S.C. 419, 93 S.E.2d 215, 220 (1956).

Our holding in this case should not be construed to mean that an officer, duly elected and inducted into his position for a definite term, has no financial or "property" interest that may be protected against interference by others not acting under statutory or constitutional authority. *See Walton v. Davis*, 188 Ga. 56, 2 S.E.2d 603, 604 (1939); *State ex rel. Ryan v. Norby*, 118 Mont. 283, 165 P.2d 302, 304 (1946). As stated in *Sutton v. Adams*, 180 Ga. 48, 178 S.E. 365, 375 (1934): "While an officer has no vested right in the office held by him, and thus cannot complain of an abolishment of such office, or of his removal or suspension, according to law, . . . it does not follow that he has absolutely no financial or property interest which may be protected by a court of equity as against one who otherwise and by private means seeks to interfere with his possession and conduct of such office during his incumbency therein." *See also Carver v. Wheeler County*, 200 S.W. 537, 538 (Tex.Civ.App.—Amarillo 1918, no writ). *Cf. Taylor v. Nealon*, 132 Tex. 60, 120 S.W.2d 586 (1938) (election contest between rival candidates); *State ex rel. Jennett v. Owens*, 63 Tex. 261 (1885) (same). What we do hold is that the qualified interest held by a public officer is not "property" within the sense of constitutional guarantees against governmental takings of property without compensation. *See Myers v. Tunks*, 360 S.W.2d 518, 520 (Tex.1962). Absent a recognizable property interest, the officers have no claim for salaries for the unserved portion of their terms. *See generally Bennett v. City of Longview*, 268 S.W. 786 (Tex.Civ.App.—Texarkana 1925, writ ref'd n.r.e.); *State ex rel. Dowlen v. Rigsby*, 43 S.W. 271 (Tex.Civ.App.1897) *writ ref'd per curiam*, 91 Tex. 351, 43 S.W. 1101 (1897).

## Procedural Due Process

The officeholders claim, and the court of appeals held, that salaries for unexpired terms should be recoverable in this case because the procedures employed to vacate the precinct positions did not conform with minimum requirements of due process. According to the court of appeals, procedural due process in such cases calls for notice in advance of hearing informing the incumbents of (1) the time, place, and location of each hearing; (2) the subject matter to be considered; (3) the possibility of termination of positions prior to expiration of terms; (4) the possibility that no incumbents would be reappointed to the new positions; (5) the possibility that present salaries would not be continued; and (6) the existence of the right to appear and defend rights and to show cause why the offices should not be terminated without compensation. 624 S.W.2d at 744. The court concluded upon review of the record that such due process requirements had not been met in the present case.

The requirements of procedural due process apply only to the threatened deprivation of liberty and property interests deserving the protection of the federal and state constitutions. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Therefore, any assessment of proper procedural safeguards necessarily begins with a consideration whether the particular interest at stake is a protectible interest. In the present case, we acknowledge that an officer's interest in his elected position, though not "property" in the conventional sense, is a recognizable interest for purposes of procedural due process analysis. *See Ridgway v. City of Fort Worth*, 243 S.W. 740, 745 (Tex.Civ.App.—Fort Worth 1922, writ dism'd); *Paris v. Cabiness*, 98 S.W. 925, 927 (Tex.Civ.App.1906, no writ). *See also Howard v. Bell County Board of Education*, 247 Ky. 586, 57 S.W.2d 466, 467 (1933). This view is consistent with recent United States Supreme Court pronouncements that procedural due process protection extends well beyond traditional concepts of ownership and title to encompass anything to which a person may assert a legitimate claim of entitlement. *Board of Regents v. Roth, supra* 408 U.S. at 572, 577, 92 S.Ct. at 2706, 2709.

To say that an interest deserves due process protection does not define the

amount of process that is due in a given instance. At a very basic level, deprivation of a protected interest requires notice and an opportunity to be heard.[5] The type of notice and hearing required varies according to the facts of the situation. *Bell v. Burson*, 402 U.S. 535, 540, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). It is incorrect to state that the full procedural protections afforded in a criminal trial proceeding are required every time there is a right to a hearing. *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *Robison v. Wichita Falls & North Texas Community Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975).

In his treatise on administrative law, Professor Kenneth Davis attempted to clarify the confusion surrounding notice and hearing requirements by drawing a distinction between determinations of "adjudicative" and "legislative" facts. K. Davis, Administrative Law Treatise §§ 12:1–12:8 (2d ed. 1979). Under this dichotomy, the "adjudicative" facts, those that answer the questions "who did what, where, when, how, why, with what motive or intent," are the types of facts that usually demand a trial-type proceeding complete with full procedural safeguards—service of citation, compulsion and cross examination of witnesses, and reliance upon a disinterested trier of fact. *Davis, supra* at 12:3. "Legislative" facts, on the other hand, deal with matters of policy and administrative discretion, and affect individual parties to a dispute only to the extent that those parties are involved in the overall legislative scheme. *Id.* Determinations of such fact issues generally may be made without demands for an adversari-

al setting, *Bi-Metallic Investment Co. v. State Board of Equalization of Colorado*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); *SEC v. Frank*, 388 F.2d 486, 491–92 (2d Cir. 1968); *Jackson County Public Water Supply District v. State Highway Commission*, 365 S.W.2d 553, 559 (Mo.1963), although an opportunity for open and public debate in a speechmaking or public meeting-type hearing or in a notice and comment procedure is probably appropriate if not essential. *Londoner v. Denver*, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908); *Davis, supra* at § 12:5.

■ In applying these principles to the instant case, we note that commissioners courts in various counties of Texas are given authority to divide the counties into precincts and to revise those precincts "from time to time, for the convenience of the people." Tex.Const. art. V, § 18. Furthermore, as we noted previously, the commissioners had at the time of this suit statutory authority under article 2351½ to abolish offices and declare vacancies incident to the redrafting of boundary lines. Assuming the validity of article 2351½, and given the constitutional provision, the Tarrant County Commissioners Court received a grant of power from the people of the state and from the legislature to perform the action here complained of. As such, the redistricting may be seen as the exercise of legislative or quasi-legislative power leading to the resolution of essentially political issues. We cannot conclude that the officers involved in this suit were wrongfully deprived of a trial-type adjudication of relevant facts, since there were *no adjudicative facts to be determined.*[6]

---

5. "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950).

6. A different situation would have existed, of course, and a more sophisticated adjudication procedure would have been required, had the

commissioners sought to remove any of the officers for causes such as incompetence or malfeasance. In such cases, due process would accord the officer an opportunity to refute the charge in a trial-type hearing in order to protect his "good name, reputation, honor, or integrity." *Board of Regents v. Roth, supra* 408 U.S. at 573, 92 S.Ct. at 2707; *Cafeteria & Restaurant Workers Union v. McElroy, supra* 367 U.S. at 898, 81 S.Ct. at 1750; *Wieman v. Updegraff*, 344 U.S. 183, 190–91, 73 S.Ct. 215, 218–219, 97 L.Ed. 216 (1952). Additionally, the issues of incompetence and malfeasance would

Examination of the record in this case leads us to conclude that, given the circumstances of the case and the issues to be decided, the officeholders received as much protection as they were due. The court of appeals acknowledged in its opinion that the district attorney's office mailed letters to the officers informing them that the commissioners court had scheduled public meetings to consider redistricting the officers' precincts, and that notice of the meetings was also posted in compliance with the requirements of the Open Meetings Act, Tex.Rev.Civ.Stat.Ann. art. 6252–17 § 3A. In addition, the record reveals that the officers did, in fact, know about the hearings; that they knew what the hearings were for; that each officer attended at least one meeting, some accompanied by their attorneys; and that each officer was given the opportunity at the meetings to make comment and inquiry. There was considerable discussion, and at least one officer did exercise his right to speak. While we do not hold or imply that the officeholders whose positions were terminated had no rights to notice of the proceedings, or that the redistricting determinations could have been made in secret without invited comment from the public or the officers, we do hold that the attempts made to involve all interested parties in the legislative process in this case were adequate. We therefore render judgment that the respondents take nothing.

constitute adjudicative facts determinable only in an adversarial setting, and not in a legislative forum. DAVIS, *supra* at § 12:3–12:4. In the present case, there was no suggestion of removal of the officers for "cause"; rather, the discretionary action was taken pursuant to the statutory and constitutional authority. The only factual issue arguably involved in the process was whether the redistricting plan was consistent with the "convenience of the people," although this question was itself essentially a matter of policy.