Dear Senate Fisher,
¶ 0 This office has received your requests for an Attorney General Opinion addressing, in effect, the following questions:
1. What is the effect, if any, of the amendment to 70O.S.Supp. 1994, § 5-107A(B)(2), effective July 1, 1994, on aschool board member elected from a "board district" prior to July1, 1994, who ceased to be a resident of his or her "boarddistrict" before July 1, 1994?
2. Is the effect, if any, of the 1994 amendment to 70O.S.Supp. 1994, § 5-107A(B)(2) different as to a school boardmember elected from a "board district" prior to July 1, 1994, butwho ceased to be a resident of his or her "board district" afterJuly 1, 1994?
3. Are there any federal or state constitutional limitations onthe ability of the Legislature through the enactment of the 1994amendment to 70 O.S.Supp. 1994, § 5-107A(B)(2), to affect anincumbent school board member who was elected prior to July 1,1994, but who ceases to be a resident of the "board district"after July 1, 1994?
 INTRODUCTION
¶ 1 To answer your questions we must first review the amendment in question to determine how it altered the residency requirements for school board members. Second, we must determine the effect of any such alteration on the two scenarios stated in your questions.
¶ 2 Section 5-107A of Title 70 governs the election of school district board of education members. This statute was enacted in 1972 and has undergone various changes since then. Since 1972 members of boards of education of local school districts have been elected from districts called "election districts" or "board districts" which are as equal as possible in population. 70O.S.Supp. 1972, § 5-107A[70-5-107A](G)(2) and 70 O.S.Supp. 1994, §5-107A[70-5-107A](B)(1) and (2). "One member of the board of education shall be elected by the electors of the school district to represent each such board district." Id. at (B)(2).
¶ 3 Until 1991 the statute also provided:
 If during the term of office to which he were elected a member shall cease to be a resident of such election district for which he was elected, his office shall become vacant and such vacancy shall be filled as provided in Section 13A-110 of Title 26 of the Oklahoma Statutes[.]
70 O.S.Supp. 1990, § 5-107A[70-5-107A](B)(2).
¶ 4 In 1991 the statute was amended to include what might be called a safe harbor provision for a school board member who ceased to be a resident of his or her board district during the term of office:
 [P]rovided, if the member still resides within the school district to which board that person was elected, the office shall not become vacant and the member may serve the remainder of the term to which the person was elected[.]
70 O.S. 1991, § 5-107A[70-5-107A](B)(2) (emphasis added).
¶ 5 However, in 1994, this three-year old safe harbor provision was eliminated, effective July 1, 1994. Only from 1991 until July 1, 1994, did the statute provide that a member who ceased to be a resident of the board district could complete the term; thus, a member elected after July 1, 1994, who ceased to be a resident could no longer complete the term.
¶ 6 The questions posed by the 1994 amendment are first, whether the elimination of that safe harbor provision affects a school board member elected prior to July 1, 1994, but who ceased to be a resident of the board district prior to July 1, 1994, and, second, whether the elimination of that safe harbor provision impacts a school board member elected prior to July 1, 1994, but who ceased to be a resident of the board districtafter July 1, 1994; the second question involves consideration of both the rules of statutory construction and of constitutional limitations.
 I. EFFECT OF THE REPEAL OF THE SAFE HARBOR PROVISION ON A BOARD MEMBER WHO CEASED TO BE A RESIDENT OF THE BOARD DISTRICT PRIOR TO JULY 1, 1994
¶ 7 The first question addresses the situation when a school board member ceased to be a resident of his or her board district prior to the elimination of the safe harbor provision. In answering this question we look to the rules of statutory construction.
¶ 8 Absent a plain legislative intent to the contrary, statutes are generally presumed to operate prospectively only. Any doubt should be resolved against retroactive application. In reMcNeely, 734 P.2d 1294, 1296, 1297 (Okla. 1987); Board ofTrustees of Police Pension and Retirement System of City of Tulsav. Kern, 366 P.2d 415, 418 (Okla. 1961). Here there is no clear intent that the Legislature wished to make the statute retroactive to school board members who had ceased being residents of their board districts prior to July 1, 1994, but who continued to serve under the safe harbor provision.
¶ 9 To the contrary, the Oklahoma Legislature has demonstrated that when it wishes to make a statute concerning the qualifications of and appointment to elective office retroactive, it has done so. For example, Section 3.1 of Title 51, passed in 1945, and now repealed, provided:
 When any person elected to a public office has died or failed to qualify . . . such public office shall be deemed vacant and shall be filled by the officer or board authorized to fill such vacancy. . . . The provisions of this Act shall be retroactive as well as prospective in its operation.
51 O.S. 1951, § 3.1[51-3.1] (repealed) (emphasis added).
¶ 10 Thus, in answer to the first question, the 1994 amendment to 70 O.S.Supp. 1994, § 5-107A[70-5-107A](B)(2) has no effect upon a school board member who was elected prior to July 1, 1994, and who ceased to be a resident, prior to July 1, 1994, of his or her board district.
 II. EFFECT OF THE REPEAL OF THE SAFE HARBOR PROVISION ON A BOARD MEMBER WHO CEASES TO RESIDE IN THE "BOARD DISTRICT" AFTER JULY 1, 1994
¶ 11 The second question addresses the issue whether a board member who ceases to reside in the board district after July 1, 1994, may complete his or her term of office. This question involves the analysis of whether the elimination of the safe harbor provision is prospective from the effective date of the statute, July 1, 1994, thus applying to incumbent board members who cease to be residents after July 1, 1994, or may only be applied prospectively to board members who begin their terms after July 1, 1994.
¶ 12 Again, the rules of statutory construction must be examined to determine the Legislature's intent as to incumbent board members who were elected prior to July 1, 1994, but who cease to be residents after July 1, 1994. The Oklahoma Legislature has acted when it wishes to protect incumbent school board members from the effects of its legislation. In another section of the statute in question, 70 O.S.Supp. 1994, §5-107A[70-5-107A](C), the Legislature clearly delineated that in the case of reduction of a school board from nine to seven members, "[s]chool board members currently serving in offices abolished pursuant to this subsection shall continue serving until the end of their current terms as at-large members." Id. No such expression of protection was provided by the Legislature with respect to incumbents who were elected during the existence of the safe harbor provision between 1991 and 1994 but who ceased to be residents of their board districts after July 1, 1994.
¶ 13 Moreover, to the extent that the argument could be made that the Legislature intended to protect incumbents when it passed the safe harbor in 1991, that argument is equally persuasive to demonstrate the Legislature's intent in 1994 to remove that safe harbor for all incumbents who ceased to be residents of their board districts after July 1, 1994. Under the basic rule of statutory construction that an amendment reasonably indicates legislative intent to alter the law, the amendment in 1994 reasonably indicates legislative intent to eliminate the safe harbor for all incumbents who cease to be residents of their board districts after July 1, 1994. See, Irwin v. Irwin,433 P.2d 931, 934 (Okla. 1965); Gordon v. Browning, 572 P.2d 603,605 (Okla.Ct.App. 1977).
¶ 14 Jurisprudence in the area of changes in laws affecting the residency of incumbent elected officials also indicates that laws may be applied to incumbent elected officials to change residency requirements during their terms of office. Dorf v. Skolnik,371 A.2d 1094 (Md.App. 1972) (in which the court ruled that an official elected prior to an amendment concerning residency, who ceased to meet the residency requirements after the amendment, was no longer qualified to serve); see also, Tarrant County v.Ashmore, 635 S.W.2d 417 (Tex. 1982) (holding that where statutory authority existed, precinct lines could be changed for county commissioner districts, affecting incumbent county commissioners). We are aware of no jurisprudence in the area of incumbent residency which would, directly or by analogy, prohibit immediate prospective application of the 1994 amendment to incumbent school board members who cease to be residents of their board districts after July 1, 1994.[1]
 III. FEDERAL AND STATE CONSTITUTIONAL LIMITATIONS
¶ 15 The final question is whether there exist any federal or state constitutional limitations on the ability of the Legislature to affect incumbent school board members who were elected prior to July 1, 1994, but who cease to be residents of their board districts after July 1, 1994. The United States Constitution's Fourteenth Amendment due process guarantees and those same guarantees provided under Article II, § 7 of the Oklahoma Constitution must be analyzed.
¶ 16 It is axiomatic that such an examination requires an initial determination whether a school board member has, in these circumstances, a "property interest" under State law in his or her elected office in order to trigger some type of due process, either substantive or procedural. As noted by the TarrantCounty court, "[t]he view that public office is not property has been generally entertained in this country." Tarrant County v.Ashmore, 635 S.W.2d 417, 421 (Tex. 1982) (citing Taylor v.Beckham, 178 U.S. 548, 70 S.Ct. 890, 44 L.Ed. 1187 (1900)). The court, citing numerous cases from other jurisdictions,[2]
stated:
 We will only observe that a careful study of the cases discloses that in the early history of the English jurisprudence the right to hold office was regarded as a property right, and many decisions were made in recognition of this principle; but the American courts now uniformly hold that an office, relatively [sic] to the government, is a public trust, and not a property right. Where an office is created by the Legislature, the power which created it may fix its term and provide for the sooner determination thereof, and the officer takes the office with this limitation.
Id. (citing Edge v. Holcombe, 135 Ga. 765, 70 S.E. 644
(1911)) (emphasis added). Accord, Sweeney v. Tucker,375 A.2d 698, 713 (Pa. 1977); Leek v. Theis, 539 P.2d 304, 326 (Kan. 1975).
¶ 17 Likewise, in Oklahoma, an elected office is considered to be for the benefit of the public. Guthrie Daily Leader v.Cameron, 41 P. 635, 636 (Okla. 1895). Public office is considered a public trust. State v. Sowards, 82 P.2d 324, 325
(Okla.Crim.App. 1938). Thus, under this analysis, when the question is whether a change in residency may affect a school board member's right to complete his or her term, a school board member has no constitutionally protected property interest in his or her office should the Legislature wish to alter the residency requirement for holding that office.
¶ 18 One caveat regarding property interest jurisprudence should be noted. The Oklahoma Supreme Court has noted circumstances where due process is required:
 [W]here contested issues of fact are raised, a litigant whose office is sought to be declared vacant must be granted an opportunity to litigate in a proper judicial forum, all fact issues which may be involved.
Nesbitt v. Apple, 891 P.2d 1235, 1241 (Okla. 1995).
¶ 19 Thus, in circumstances where vacation of an office is dependent upon a conviction or a determination whether a school board member has, in fact, ceased to be a resident of his or her board district, an inquiry whether the limiting event has occurred is necessary under procedural due process guarantees.
¶ 20 However, this guarantee to procedural due process does not rise to the level of a substantive interest which would prohibit the Legislature from making a policy decision that school board members, both incumbent and future, should reside in a particular school board district. In Tarrant County v. Ashmore,635 S.W.2d at 423, the court cogently distinguished statutes which require a factual adjudication of issues such as incompetence or malfeasance, which determination implicates due process, from statutes reflecting legislative policy. That analysis is also appropriate here. The legislative policy determination that incumbent board members should reside in a board district does not abrogate a substantive constitutional interest in the school board position; a factual determination whether a board member has actually ceased to reside in a board district may, however, under Nesbitt, mandate certain procedural due process.[3]
This distinction is logical; it preserves the concept of an elected office as a public trust, not a property right, while recognizing the Oklahoma Supreme Court's concerns in Nesbitt.
¶ 21 Under the analysis above, if a school board member who was elected prior to July 1, 1994, ceases to be a resident of the board district after July 1, 1994, the office shall become vacant under 70 O.S.Supp. 1994, § 5-107A[70-5-107A](B)(2).
¶ 22 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The 1994 amendment to 70 O.S.Supp. 1994, § 5-107A(B)(2)has no effect on a school board member who was elected prior toJuly 1, 1994, and ceased to be a resident of his or her boarddistrict prior to July 1, 1994.
2. If a school board member who was elected prior to July 1,1994, ceases to be a resident of the board district after July 1,1994, the office shall become vacant pursuant to 70 O.S.Supp.1994, § 5-107A(B)(2).
3. Federal and State constitutional substantive due processrights are not violated by the 1994 amendment to 70 O.S.Supp.1994, § 5-107A(B)(2) as to a school board member who ceases tobe a resident of the board district after July 1, 1994.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
GRETCHEN GROVER HARRIS ASSISTANT ATTORNEY GENERAL
[1] We need not nor do we address the question of the ability of the Legislature to affect incumbents on issues other than residency, such as age or length of term.
[2] The cases cited by the court to support its analysis include, among others: Smith v. Thomson, 219 Iowa 888,258 N.W. 190, 193 (1934); Cosby v. Moore, 259 Ala. 41, 65 So.2d 178, 181
(1953); Trimble v. People, 19 Colo. 187, 34 P. 981 (1893);Kirkpatrick v. King, 228 Ind. 236, 91 N.E.2d 785, 788-89
(1950).
[3] The question has also been asked of this office whether a school board member, who signed a contract to buy a residence out of his or her board district prior to July 1, 1994, thus perhaps evincing intent to change residence, and who physically moved after July 1, 1994, ceased being a resident, and, if so, at what point in time. Because the question of residence is a factual one, this question cannot be answered by this office. 74 O.S.Supp. 1994, § 18b[74-18b](A)(5).