ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

May 1, 2008

The Honorable Rex Emerson
Kerr County Attorney
County Courthouse, Suite BA-103
700 Main Street
Kerrville, Texas 78028

Opinion No. GA-0621

Re: Status of the Kerr County Airport Authority
(RQ-0643-GA)

Dear Mr. Emerson:

You ask the following questions regarding the status of the Kerr County Airport Authority:

> 1) Whether the Kerr County Airport Authority created under H.B. No. 956 can be utilized and the Board populated 37 years after [the] county election and vote canvassing declaring [the] authority created.

> 2) Whether the alternate airport governance created by [the] City [of Kerrville] and County [of Kerr] after the 1970 election establishing the Kerr [C]ounty Airport Authority can legally govern the airport.[1]

## I.  Background

Consideration of your questions necessitates a review of the relevant legal and factual background. Adopted in 1966, article IX, section 12 of the Texas Constitution provides for the establishment of airport authorities. *See* TEX. CONST. art. IX, § 12. This section of the constitution requires legislative action in order to execute its provisions. *See id.* The legislative session immediately following the adoption of the constitutional amendment enacted enabling legislation (House Bill 956) for the Kerr County Airport Authority ("Authority"), subject to voter approval. *See* Act of May 19, 1967, 60th Leg., R.S., ch. 393, §§ 1–29, 1967 Tex. Gen. Laws 896, 896–903 [hereinafter Act of May 19, 1967].

---

[1]*See* Letter from Honorable Rex Emerson, Kerr County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Oct. 23, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

As contemplated in the Authority's enabling legislation, you explain that "Kerr County accepted and certified [a] citizen's petition for the creation of a Kerr County Airport Authority" and called for an election. Request Letter, *supra* note 1, at 1; *see* Act of May 19, 1967, § 3, at 896–97 (providing for the creation and organization of the Authority). Prior to the election, the enabling legislation required that "[t]he governing body of the city of Kerrville . . . determine by majority vote whether the directors [were] to be appointed or elected." Act of May 19, 1967, § 5(b), at 897. You tell us that "the City of Kerrville chose to have the Board members appointed." Request Letter, *supra* note 1, at 1. You indicate that in May of 1970 the election to create the Authority was held and that the "Commissioners Court canvassed the votes and declared [that] the Kerr County Airport Authority was created." *Id.*

The Authority's enabling legislation provides the following regarding the appointment of board members:

> (a) If the governing body of Kerrville determines that the directors are to be appointed, the Commissioners Court of Kerr County shall appoint them within 10 days after declaring the authority created.

> (b) To be effective, an appointment to the board must be made after consultation with, and with the consent of, the governing body of Kerrville. The governing body shall express its consent by appropriate resolution.

Act of May 19, 1967, § 6(a)–(b), at 897. For reasons that are apparently no longer clear, the Kerrville City Council and Kerr County Commissioners Court failed to agree upon and appoint the board as contemplated in the enabling legislation. Request Letter, *supra* note 1, at 1.[2]

In the years since the election, you indicate that "the airport has been managed under either the Texas Municipal Airport Authority or the Transportation Code." Request Letter, *supra* note 1, at 1; *see also* Comm'rs Letter, *supra* note 2, at 2–3 (describing various actions taken by the City and County as to the management of the airport). We understand, more specifically, that the airport has been managed by a joint board pursuant to state law, currently codified at chapter 22, Transportation Code, and that this method of managing the airport was initiated just prior to the May 1970 election. Request Letter, *supra* note 1 (Appendices C, D, & K indicating that the City and County took action to establish a joint board pursuant to the Texas Municipal Airports Act on February 24, and February 25, 1970, respectively); Comm'rs Letter, *supra* note 2, at 2 (explaining that individuals were appointed to an airport commission pursuant to the Municipal Airports Act just prior to the Airport Authority election); *see also* TEX. TRANSP. CODE ANN. §§ 22.003 revisor's note (Vernon 1999) (explaining that this law was formerly cited as the "Municipal Airports Act"); 22.074 (Vernon Supp. 2007) (providing for creation of a joint board).

---

[2]*See also* Letter from Kerr County Commissioners Court, to Honorable Greg Abbott, Attorney General of Texas, at 2 (Jan. 14, 2008) (on file with the Opinion Committee) [hereinafter Comm'rs Letter].

## II.    Analysis

### A.    Legal status of the Authority

We begin our analysis by examining the legal status of the Authority. Political subdivisions such as the Authority are authorized by the State, and "[b]eing creatures of the State they can be destroyed only by their creator." *Watts v. Double Oak Indep. Sch. Dist.*, 377 S.W.2d 779, 780 (Tex. Civ. App.—Fort Worth 1964, no writ); *see also* Act of May 19, 1967, § 19, at 900 ("The [A]uthority is a body politic and political subdivision of the state . . . .").

We do not find that the Authority's enabling legislation has ever been repealed. *Accord* Request Letter, *supra* note 1, at 1–2. And no provision for dissolution of the Authority is found in the authorizing constitutional provision, the enabling legislation, or other state law. TEX. CONST. art. IX, § 12; Act of May 19, 1967, §§ 1–29, at 896–903; *cf., e.g.*, TEX. CONST. Art. IX, § 9 (providing for the dissolution of hospital districts); TEX. WATER CODE ANN. § 49.321 (Vernon 2000) (providing that certain water districts may be dissolved when they are inactive for a period of five consecutive years). Without authorization, the Authority may not be dissolved. Tex. Att'y Gen. Op. Nos. JC-0220[3] (2000) at 2 (concluding that a hospital district could not dissolve pursuant to an election because there was no statutory authority to call and hold a dissolution election); WW-395 (1958) at 3 (explaining that absent specific authority and statutory procedure an inactive junior college district could not be dissolved).

Moreover, neither the failure to appoint the board of directors nor the nonuse of its powers works to dissolve the Authority. *Cf. Baber v. City of Rosser*, 770 S.W.2d 629, 631 (Tex. App.—Dallas 1989, writ dism'd w.o.j.) (holding that a municipal corporation was not dissolved by nonuse or failure to elect officers but rather would continue to exist until legally abolished); Tex. Att'y Gen. Op. No. C-721 (1966) at 2 (explaining that inactivity or nonuse in itself will not abolish a legally created entity). In sum, we conclude that the Authority is still in legal existence.

### B.    Activation of the Authority

With the understanding that the Authority is still in existence, we turn to the question of whether the Authority may "be utilized and the Board populated 37 years after [the] county election and vote canvassing declaring [the] authority created." Request Letter, *supra* note 1, at 1. In a letter received by our office from the City of Kerrville ("City"), the city attorney argues that because Kerr County ("County") did not appoint the board of directors within the ten-day deadline set out in the enabling legislation of the Authority, it may not now be established.[4]

---

[3]This opinion has been modified on other grounds by statute.

[4]Letter from Michael C. Hayes, City Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Nov. 29, 2007) (on file with the Opinion Committee).

The Authority's enabling legislation, as previously recited, does provide that "the Commissioners Court of Kerr County shall appoint [the board members] within 10 days after declaring the authority created." Act of May 19, 1967, § 6(a), at 897. To the extent the city attorney's argument is premised on the fact that the 1970 commissioners court no longer exists to exercise the power of appointment, we do not believe this serves as a barrier. We believe that it was the intent of the Legislature to vest the power of appointment in the commissioner *positions*, rather than the specific *persons* who held those positions in 1970. *See Tarrant County v. Ashmore*, 635 S.W.2d 417, 420–21 (Tex. 1982) (explaining that public offices belong to the people and are given to particular officeholders temporarily in trust); Tex. Att'y Gen. Op. No. DM-140 (1992) at 2 (concluding that the current commissioners court could serve as the governing body of a drainage district even though the enabling legislation spoke in terms of the governing board on the effective date of the Act).

To the extent the city attorney's argument is premised on the notion that appointments made outside the ten-day window would be invalid, we also disagree. The court in *Burton v. Ferrill*, 531 S.W.2d 197 (Tex. Civ. App.—Eastland 1975, writ dism'd) considered whether the failure to timely appoint temporary directors to a hospital district invalidated those appointments. 531 S.W.2d at 198–99. In that case, the hospital district's enabling legislation provided that "[o]n the effective date of this Act, the Commissioners Court of Comanche County shall appoint five persons to serve as temporary directors." *Id.* at 198. The court held that the timing requirement in the enabling legislation was directory in nature and that the appointments did not have to be made on the effective date of the legislation to be valid. *Id.* at 199. The court relied, in part, on the principle of statutory construction that

> [i]f the statute directs, authorizes or commands an act to be done within a certain time, the absence of words restraining the doing thereof afterwards or stating the consequences of failure to act within the time specified, may be considered as a circumstance tending to support a directory construction.

*Id.* (quoting *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956)); *see Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 495 (Tex. 2001); *compare Sullivan v. Tex. Dept. of Pub. Safety*, 93 S.W.3d 149, 153–54 (Tex. App.—Beaumont 2002, no pet.) (Burgess, J., dissenting) (discussing the fact that when the statutory phraseology denies the exercise of a power after a certain time or restrains performance after a certain time the statute is generally mandatory in nature); *City of Uvalde v. Burney*, 145 S.W. 311, 312 (Tex. Civ. App.—San Antonio 1912, no writ) (explaining that timing requirements expressed in the negative are necessarily mandatory).

In the case before us no restraining words are attached to the requirement that the County appoint the board members within ten days of declaring the Authority created. Act of May 19, 1967, § 6, at 897. And the Legislature did not provide any consequence for noncompliance with the ten-day requirement. *Id.* We look then to the statute's purpose in determining the proper consequence of noncompliance. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d at 494; *Tex. Dep't of Pub. Safety v. Dear*, 999 S.W.2d 148, 152 (Tex. App.—Austin 1999, no pet.). The stated purpose of the enabling

legislation is "to implement the provisions of Section 12, Article IX, Constitution of the State of Texas, by providing a method for the creation, administration, and operation of an airport authority in Kerr County." Act of May 19, 1967, § 1, at 896. Utilizing the rules of construction set out herein and giving reasonable effect to the legislative purpose of providing a method to create, administer, and operate the Authority, we conclude that the ten-day appointment requirement is directory in nature. To conclude otherwise would require the Authority to lie dormant. "A directory provision is, by definition, one 'the observance of which is not necessary to the validity of the proceeding.'" *Dear*, 999 S.W.2d at 151 (citation omitted). Thus, we conclude that appointments to the board of the Authority may still be made as directed by the enabling legislation and will not be invalid for failure to comply with the ten-day deadline.

Our conclusion here that the Authority may be activated thirty-seven years after its creation by appointing a board of directors is consistent with a previous attorney general opinion that considered similar issues. *See* Tex. Att'y Gen. Op. No. C-721 (1966) at 1–2 (concluding that a junior college district could be reactivated some thirty years after its establishment by complying with state law requirements as to the operation and governance of junior college districts).

## C.    Governance of the airport

We now turn to your question of "[w]hether the alternate airport governance created by [the] City and County after[5] the 1970 election establishing the Kerr [C]ounty Airport Authority can legally govern the airport." Request Letter, *supra* note 1, at 1 (footnote added). You assert that once "the voters approved the Airport Authority and the Commissioners declared the Authority 'created' . . . any other form of governance flies in the face of the voters' intent." *Id.* at 2.

To answer your question, we focus on provisions of the Authority's enabling legislation. Section 18 of the enabling legislation provides that the City and County

> may sell, give, or lease their interest in any airport facility to the authority. The transfer may be consummated without the city or county giving notice of its intention to sell, give, or lease the airport facility to the authority, and without an election on the part of the city, county, or authority.

Act of May 19, 1967, § 18, at 900; *see also* TEX. TRANSP. CODE ANN. § 22.080(a)(2) (Vernon 1999) (providing a joint board may not dispose of an airport without the consent of each governing authority of the board's constituent agencies). Conversely, the enabling legislation provides: "The [A]uthority may acquire by purchase, gift, or eminent domain any interest in any existing airport facility publicly owned and financed and served by a certificated airline." Act of May 19, 1967, § 14(a), at 899.

---

[5]Based on the background information you provided and information from the County, we note that the joint board was, in fact, created just prior to the May 1970 election. *See supra* p. 2.

Thus, the Authority did not upon its creation automatically take over any existing airport facility. Rather, the enabling legislation contemplates that the Authority may acquire such facilities and the City and County may sell, give, or lease such facilities. We have no information indicating that the City and County have taken action to sell, give, or lease their interests in the airport to the Authority or that the Authority has taken action to acquire the same. And we find nothing in article IX, section 12 of the Texas Constitution, the Authority's enabling legislation, or chapter 22 of the Transportation Code that expressly prohibits the operation of a joint board in the same geographical territory where an airport authority is established.[6] Unless and until the City and County take action to sell, give, or lease their interests in the airport to the Authority, we conclude that the City and County may manage the airport in any manner authorized by state law, including via a joint board. *See* TEX. TRANSP. CODE ANN. § 22.074 (Vernon Supp. 2007) (providing for creation of a joint board).

---

[6]We note that cities and counties are prohibited from acquiring or taking over an airport owned or controlled by another city, county, or public agency of this state without consent. *See* TEX. TRANSP. CODE ANN. § 22.011(d) (Vernon 1999); *id.* 22.001(6) (defining local government). To the extent one might argue the Authority is a "public agency of this state," this provision would not serve as a barrier here because the City and County have not transferred any interest to the Authority. That is, the Authority does not own or control the airport.

## S U M M A R Y

The Kerr County Airport Authority ("Authority"), established in 1970, is still in legal existence, and the board of directors may be appointed. Because the City of Kerrville and County of Kerr have not sold, given, or leased their interests in the airport to the Authority, they may govern the airport via a joint board under chapter 22, Transportation Code.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee